George WASHINGTON, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17381.

United States Court of Appeals Eighth Circuit.

Jan. 24, 1964.

Roger M. Hibbits, St. Louis, Mo., for appellant.

William C. Martin, Asst. U. S. Atty., St. Louis, Mo., Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo., for appellee.

Before MATTHES and MEHAFFY, Circuit Judges, and MICKELSON, District Judge.

MEHAFFY, Circuit Judge.

The appellant, George Washington, was tried to a jury and found guilty of violation of § 641, Title 18 United States Code, and sentenced to a term of six years in the custody of the Attorney General.

The indictment charged that on or about the 26th day of September, 1962, the appellant, in the City of St. Louis, Missouri, "did steal and purloin a thing of value of the United States and of a department thereof, to-wit, one Keuffel and Esser Company surveyor's transit, belonging to and being the property of the United States Corps of Engineers, Granite City Army Depot, the value of said property exceeding the sum of $100.00."

Briefly summarized, the evidence is as follows. Two witnesses who knew appellant by sight say they saw him on the day of the theft leaving the site of the building at 1629 Washington Avenue in the City of St. Louis, Missouri carrying a bag which they identified as appearing to be the bag which was used as a cover for the surveyor's instrument stolen from the building on that same date. Neither of these witnesses knew the appellant by name but one of them stated he had seen him thirty or forty times. The other witness, a freight elevator operator at the building, positively identified the appellant as a person he passed on the loading platform where the instrument was stolen. The elevator operator later found inside the building on the stairway accouterments normally used with the instrument on the job. The foreman of the Precision Instrument Section of the Granite City Army Depot which supervised the repair and inspection of surveying instruments identified one of the Government's exhibits as a carrying case used to transport a transit bearing the same serial number as the instrument which was stolen and the initials "U.S.". The protective carrying bag and the transit, serial number 108655, which had been stolen, were also introduced into evidence. The instrument also had the initials "U.S." engraved on it indicating, at least, ownership by the United States Government at some time during its existence.

This witness testified that after his inspection of the instrument, it was shipped to the Seiler Instrument Company at 1629 Washington Avenue for repair, that the cost of the instrument to the Government was $530.00 and that it had been repaired prior to being stolen.

Mr. Seiler, Vice President of the Seiler Instrument Company, testified his company occupied the eighth floor of the building from which the instrument was stolen. According to him, access to the eighth floor could be had by freight elevator, passenger elevator, stairway and a fire escape, and that on the date in question, it was reported to him that someone had taken an instrument. Seiler found the instrument box downstairs under the staircase and the instrument missing. It was his testimony that he had seen all three of the Government's exhibits, including the instrument itself, on September 26, 1962 when they were located near the elevator door inside their place of business on the eighth floor of the building along with ten other such instruments which had been repaired. In Seiler's words, the market value of the used instrument was approximately $530.00 to $550.00.

A Special Agent for the F.B.I. who investigated the theft testified that appellant was arrested by the St. Louis City Police and that he was present when appellant went before the United States Commissioner. He and another agent conversed with the appellant thereafter in the office of the United States Marshal. The appellant admitted to the agents he stole the instrument but denied knowledge it was Government property, insisting had he known he would not have taken it.

Appellant testified that he was not in the vicinity of the crime on September 26, 1962, that he had never seen the two witnesses who identified him as being in that vicinity, and that he had never been on the loading platform in the rear of the building. Appellant further testified that after appearing before the Commissioner, a Special Agent for the F.B.I. told him that if he would tell the agent where he hid the instrument and whether or not he did it, the agent promised to talk to the Commissioner to get his bond reduced. Thereupon in order to get free on bond, appellant asserted

he admitted having stolen the instrument. Shortly thereafter, the Special Agent returned, telling him his bond had been reduced from $3,000 to $1,000. Appellant admitted prior convictions for larceny, forgery and drug addiction.

Appellant here contends that the court erred in:

(a) Singling out the testimony of appellant in the court's charge to the jury, thus depriving appellant of a fair trial;

(b) Failing to sustain appellant's motion for a judgment of acquittal made at the conclusion of all the evidence for the reason that the Government failed to sustain its burden of proof that the property stolen was property of the United States Government; and

(c) Admitting testimony concerning an alleged confession by the appellant which was involuntary and induced by promises of freedom.

As to the first grounds of alleged error, there was no objection imposed to any of the court's charge. The record reflects the court's statement at the conclusion of his instructions to the jury:

"The charge that the Court gave in this matter has been read and gone over with the attorneys for the government and for the defendant. There are no objections made by either party."

Rule 30, Fed.R.Crim.P. clearly provides:

" * * * No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. * * *"

This Court has frequently held that failure to comply with the above rule provides nothing for appellate review.

The latest expression by this Court is Michaels Enterprises, Inc. v. United States, 321 F.2d 913, at pages 916–917, 8th Cir., 1963 wherein Judge Ridge ruled:

"It has been so often reiterated that failure to except to 'the charge or omission therefrom' as given, 'stating distinctly the matter to which (one) objects and the grounds of his objection' (Rule 30 F.R.Cr.P., 18 U.S.C.A.), presents nothing for appellate review, so far as the charge to a jury in a criminal case is to be considered, that fortifying authorities should not be necessary. But see, Gendron v. United States, 295 F.2d 897 (8 Cir. 1961); Johnson v. United States, 291 F.2d 150 (8 Cir. 1961); Rizzo v. United States, 295 F.2d 638 (8 Cir. 1961); Wegman v. United States, 272 F.2d 31 (8 Cir. 1959); Rosenbloom v. United States, 259 F.2d 500 (8 Cir. 1958) cert. den. 358 U.S. 929, 79 S.Ct. 315, 3 L.Ed.2d 302; Davis v. United States, 229 F.2d 181 (8 Cir. 1956), cert. den. 351 U.S. 904, 76 S.Ct. 706, 100 L.Ed. 1441; Kreinbring v. United States, 216 F.2d 671 (8 Cir. 1954)."

Our perusal of the instructions leaves us with the impression that Judge Meredith went to great length to meticulously protect appellant's every right. Apparently, appellant's trial attorney concurred, since he approved of the entire charge. The failure, however, to comply with Rule 30 relieves us of any necessity to pass on the substance of the court's charge.

Appellant also argues that the Government failed to sustain its burden of proving that the property stolen was owned by the United States Government. The article stolen, a surveyor's transit, had been sent to the Seiler Instrument Company for repair by the United States Corps of Engineers, Granite City Army Depot. Mr. E. P. Seiler, Vice President of the Company, testified that the transit was stolen from his place of business and that the transit introduced into evidence by the Government was one of ten units which were completely repaired and awaiting pick-up by the "Granite City Engineers people of the Depot".

The foreman of the Precision Instrument Section of the Granite City Engineers Depot supervised the repair and inspection of the stolen transit introduced into evidence. He identified this exhibit by model, features, and serial number as the transit belonging to the U. S. Government which he shipped to the Seiler Instrument Company for repair.

■ While appellant contends that the above evidence consisted of conclusions based on hearsay, no objection was made to the admissibility of the testimony. The Corps of Engineers possessed the instrument bearing the engraved initials "U.S." on it, inspected it and elected to have it repaired. This was the same instrument that was stolen from the Seiler Instrument Company. This evidence standing alone is sufficient to justify the jury in concluding that the transit was the property of the United States Corps of Engineers, Granite City Army Depot.

No evidence was offered to dispute the Government's ownership. Neither was there any question of ownership raised upon the offer of any of the foregoing evidence.

■ In addition, the statement of the foreman as to the ownership of the transit being in the United States Government buttresses the prosecution's burden of proof on this point. Assuming arguendo that the foreman's testimony was not properly admissible for reason of hearsay, the jury was bound to give this testimony the same force and effect as if it had been legally admissible by reason of failure of appellant to object thereto.

This evidence principle is well settled and stated in 53 Am.Jur. Trial, § 135 at page 119:

"Moreover, when inadmissible evidence is permitted to be introduced without objection, the court and jury may give it such probative effect and value as it is entitled to, notwithstanding it would or should have been excluded if properly objected to."

This Court applied the rule in Liverpool & London & Globe Ins. Co. v. Nebraska Storage Warehouses, Inc., 96 F.2d 30, 34 (8th Cir. 1938):

"* * * No objection was made to the testimony when it was received. Even if hearsay it is admissible and must be considered when not objected to. Simmons v. Stern, 8 Cir., 9 F.2d 256."

Thus, the properly considered evidence establishing ownership of the stolen instrument in the Corps of Engineers of the United States Government defeats appellant's argument to the contrary.

■ Finally, appellant contends that the court erred in admitting testimony of a confession alleged to be involuntary and induced by promises of freedom. An F.B.I. agent testified that appellant admitted the theft of the transit, but appellant contends he did so by reason of the promise of the F.B.I. agent to have his bond reduced.

Prior to the admission of the testimony, the court out of hearing of the jury heard the testimony of the agent and appellant, and ruled the confession admissible. Both witnesses later gave their versions of the incident to the jury.

The F.B.I. agent testified that he told appellant he did not have to make any statement and any statement he made could be used against him in a court of law. He said it was made clear to appellant that any statement must be strictly voluntary as they were not promising him anything nor threatening him. He said they told appellant that they were interested in recovering the instrument which was valuable Government property; that he in no way indicated he would try to have appellant's bail reduced; that appellant upon being asked if he did steal the surveying transit replied, "I stole it but I didn't know it was Government property. If I had, I would never have taken it." When asked what he did with the instrument, appellant replied that he sold the instrument to a party whom he identified. A check of appellant's story proved unfruitful in the re-

covery of the transit, later located at a St. Louis loan company. The agent stated appellant was told only that if he told where the instrument was, the United States Attorney would be informed of his cooperation as appellant had requested.

George Washington testified that the Commissioner set his bond at $3,000, but he was unable to raise bond in that amount. After the hearing before the Commissioner, two F.B.I. agents talked to him and asked if he could get the instrument. He replied that he did not know where it was, whereupon the agents told him if he would help them, they would help him, and that if he would admit the theft and did not want to stay in jail, they would reduce his bond. He insisted he concocted the story of the transit's whereabouts simply to cooperate and thereby effect his release. Appellant stated one of the F.B.I. agents told him his bond would be reduced enough so he could get out. (The original $3,000.00 bond was reduced to $1,000.00 but the record is silent as to the reason for the reduction.) Appellant denied the actual commission of the crime, being in the neighborhood where the crime occurred or ever having seen the two witnesses who identified him as the man who exited the building from which the instrument was stolen.

We have here a conversation between an F.B.I. agent and appellant some four days after appellant's arrest which took place in the office of the United States Marshal after the Commissioner had set appellant's bond at $3,000.00. From the account of both the F.B.I. agent and the appellant, the conversation was friendly in tone. The F.B.I. agent was trying to determine what disposition had been made of the transit which had a value over $500.00. During the course of the conversation, appellant admitted that he had taken the transit but sold it to another party, which later proved untrue. The point of disagreement is that the agent testified that he neither threatened nor promised appellant anything, that he fully advised him of his rights, and that if

appellant made a statement, he was informed it would have to be completely voluntary, subject to use against him in court. The agent specifically denied promising appellant he would get his bond reduced. Appellant contradicts this.

Appellant cites the case of Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897), which has been referred to many times as a leading case in this country on the subject of confession. Bram indeed holds that a confession to be admissible must be voluntary and not induced by any compulsion or inducement of any sort.

While the case is still cited by the Supreme Court as a leading authority, it is noted that the Chief Justice of the Supreme Court and two other Justices dissented in a five to three opinion. Nonetheless, we respect the holding in the Bram case, but it is no authority for concluding that the confession in the instant case was anything but voluntary. In the Bram case, decided before the turn of the century, Mr. Justice White, speaking for the majority, found that the questions of the interrogator under the circumstances which existed negated any possible implication that the accused's answers were voluntary. We quote from this opinion at page 562 of 168 U.S., at p. 194 of 18 S.Ct., 42 L.Ed. 568:

"* * * But the situation of the accused, and the nature of the communication made to him by the detective, necessarily overthrows any possible implication that his reply to the detective could have been the result of a purely voluntary mental action; that is to say, when all the surrounding circumstances are considered in their true relations, not only is the claim that the statement was voluntary overthrown, but the impression is irresistibly produced that it must necessarily have been the result of either hope or fear, or both, operating on the mind."

In Bram the accused was brought before the detective in a foreign port, stripped of his clothing and told by the de-

tective that one of his shipmates had been in the office and reported that he had been an eyewitness to a horrible murder committed by the accused. The accused was not advised of his rights; he was taken from the ship in irons and, to say the least, subjected to a grueling interrogation, which was anything but friendly in tone as the normal conversation between the F.B.I. agent and the appellant. The interrogation in Bram produced the impression that the accused's answers must necessarily have been the result of fear that his failure to answer would be considered as an admission of guilt or hope that if he did reply he would be benefited by removing suspicion of guilt from himself. However, appellant's answers and statements under the surrounding circumstances were not so inspired as to justify the exclusion of appellant's confession based on Bram's *ratio decidendi*.

Moreover, the record of trial is absent of any evidence that would indicate the investigating authorities' resorting to any third degree methods, i. e., no overreaching of the appellant or the breaking of his will, no suggestion of force applied or threats, no failure to advise the appellant of his rights, no question of taking advantage of a youth or a mentally weak individual, no deprivation of sleep or food, and nothing to indicate any intimidation, coercion or promise of immunity from prosecution. We obtain no special guides from the numerous Supreme Court decisions on the subject of voluntariness of confessions, for in each of these cases in which the confession was ruled inadmissible there is evidence of circumstances of severe involuntariness which produced the accused's inculpatory statements. These and other appellate decisions, citation of which would serve no useful purpose, recite the universal rule that a confession when freely and voluntarily made without coercive inducement or from exertion of undue influence upon the accused is admissible into evidence. The acid test, of course, is whether the statement is voluntary and freely made which, in turn, depends on the facts and circumstances in each case.

The trial court and jury both, in the instant case, thoroughly examined and considered the circumstances surrounding the obtainment of appellant's confession and found it to have been proffered freely and voluntarily. We find that the supporting evidence and law applicable thereto warrant their findings.

Our decision as to the judgment of conviction in its entirety is for affirmance.