**UNITED STATES of America,**
**Appellee,**

v.

**Cy CARNEY, Jr., Appellant.**

**No. 72–1147.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 13, 1972.

Decided Oct. 10, 1972.

C. Wayne Harris, Warner, Warner, Ragon & Smith, David T. Westmoreland, Fort Smith, Ark., for appellant.

James A. Gutensohn, Asst. U. S. Atty., Fort Smith, Ark., Bethel B. Larey, U. S. Atty., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, MEHAFFY, Circuit Judge, and DENNEY,* District Judge.

MEHAFFY, Circuit Judge.

Cy Carney, Jr., defendant, was indicted under 18 U.S.C. § 2313 entitled "Sale or receipt of stolen vehicles."[1] Defendant was jointly indicted with another but upon his request a severance was granted and his case tried to the court without a jury in accordance with Fed. R.Crim.P. 23(a). The Honorable Paul X Williams, Judge of the United States District Court for the Western District of Arkansas, Fayetteville Division, presided. Defendant was found guilty and sentenced to a term of five years and a fine of $2,000.00. The imprisonment sentence was suspended and defendant was placed on probation for the five years. He has appealed from said judgment of conviction, basing his appeal upon the contentions in brief that (1) the court improperly admitted and considered hearsay evidence and (2) that the evidence was insufficient to sustain the court's findings and judgment of conviction. We affirm.

The stolen vehicle was a 1970 Cadillac with identification number BO 227783, hereinafter referred to as the Cadillac. The Cadillac was the property of the American Sheet and Strip Steel Company of St. Louis, Missouri and was a fleet car in the possession of Mr. John Groffel, President of the company. On July 21, 1970 Mr. Groffel drove the Cadillac to Busch Stadium in St. Louis where he parked it in a public garage. He went to the Stadium and met his friend, Mr. Daniel D. Dolan, an insurance man in St. Louis, at the Sportsmen's Booster Club in the Stadium. Mr. Dolan had arrived and parked his automobile at a different place and after the ball game each went to his respective automobile. Mr. Dolan, a government witness, did not see Mr. Groffel drive into the public garage or see him depart. He therefore had no firsthand knowledge as to the theft of the car and his testimony will not be considered here because defendant made an objection to it on hearsay grounds.[2] We will confine our discussion to the testimony of Mr. W. E. Brown and Mr. Lester M. Ledbetter as there was no objection made to their testimony.

Brown testified that he was Claims Manager for the St. Louis Branch of the Northwestern National Insurance Group and had access to the records of said company; that he was acquainted with the American Sheet and Strip Steel Company, which is located on South Spring Street in St. Louis, Missouri; that Mr. Groffel was President of the company; and that his company had an insurance policy on the Cadillac. He described the car, its equipment, etc. and stated that at the time it was stolen it still had its original tires and about 10,000 miles on it. He said that the Cadillac was less than one year old and that he knew of his own knowledge that the car was recovered and the claim settled with Mr. Groffel's company in the amount of $6,000.00. His records showed that the Cadillac was stolen July 21, 1970. After recovery the automobile was taken to Milwaukee and sold to a

* Sitting by designation.

1. 18 U.S.C. § 2313 provides:
"Whoever receives, conceals, stores, barters, sells, or disposes of any motor vehicle or aircraft, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

2. When the objection was made the court asked that the matter be taken up on cross-examination. When cross-examination was completed the objection on hearsay grounds was not renewed; instead, an objection was made that the testimony was immaterial. Nevertheless we will treat the objection on hearsay grounds as sufficient although we might not be compelled to do so.

Cadillac-Chevrolet dealer there. He testified that he had a copy of the St. Louis police report, but no personal firsthand knowledge apart from that.

The third and final witness for the government was Mr. Lester M. Ledbetter, a special agent of the Little Rock Division of the FBI assigned to Fayetteville, Arkansas. His testimony was to the effect that on December 16, 1970 he had confidential information that the Cadillac was in the possession of defendant and might possibly be a stolen car. He knew the defendant and, accompanied by an officer of the Fayetteville Police Department, Mr. Richard Watson, went to the residence of defendant where the Cadillac was parked. Ledbetter asked defendant if he would mind if they looked at the Cadillac, whereupon defendant unlocked the Cadillac's door which enabled the officers to see the identification number on the dash which they could have seen through the window. The officers proceeded with their investigation by having the Fayetteville Police Department communicate with the National Crime Information Center at Washington, D.C., which reported that the Cadillac was a stolen automobile. The FBI agent, after receiving this information, called his supervisor in Little Rock, Arkansas requesting that he call the FBI office in St. Louis to make sure there was no error in the fact that the Cadillac was listed as stolen in St. Louis and was still outstanding as stolen there.

The two officers then went to a bowling alley that the defendant had an interest in and contacted him there and advised him that they had information that the Cadillac was a stolen vehicle. Defendant accompanied the two officers back to his apartment where a conversation ensued. Defendant was advised of his constitutional rights and signed a written waiver form. These events took place at 5:40 p. m. on the afternoon that the officers had met defendant at his residence when he produced the key to the Cadillac and opened its door.

The FBI agent testified that defendant made a statement summarized as follows: In July, 1970 defendant made a business trip to St. Louis and upon arriving at the airport met a gentleman by the name of H. M. Conley who told defendant that he was in the automobile business. The two sat together on the flight to St. Louis and Mr. Conley advised that he had Cadillacs for sale and was interested in trading one for some land or other property. Defendant agreed to a trade of two propane tanks for such an automobile and Mr. Conley delivered the Cadillac to defendant in Fayetteville, Arkansas a short time thereafter. The bill of sale defendant received for the Cadillac was on a printed form of the Fayetteville Printing Company. The seller was shown as Conley Motor Company of St. Louis and the consideration was listed as $5400.00. It was dated July 20, 1970 which, it will be noted, was one day before the car was stolen.

Fairly early the next morning an attorney for defendant called FBI Agent Ledbetter advising that he would like to bring his client to Ledbetter's office. Upon their arrival defendant related an entirely different version of his acquisition of the Cadillac, saying that his original story was not accurate and was told because he did not want to implicate a friend and former business associate; that now he wanted to advise the officer that he actually obtained the car from Mr. Glenn Merrell, a former associate in the operation of a club. Upon termination of this business venture defendant said Merrell owed him $3200.00; that Merrell came to him with the Cadillac telling him it could be obtained but it would take $2500.00 in cash to handle the deal and that the total price would be $5,000.00; and that Merrell had obtained the car from the Hertz Company. Defendant said that he would give Merrell $2500.00 in cash and credit Merrell's indebtedness of $3200.00 with another $2500.00. Upon this basis a deal was made, and it was then that defendant re-

ceived the bill of sale. This second version as related by defendant which implicated Merrell had Merrell delivering the Cadillac to defendant in Fayetteville shortly after the car was stolen, whereas the first story had Mr. Conley delivering the car to defendant in Fayetteville shortly after the car was stolen.

As the case developed it was on the basis of the uncontradicted testimony of FBI Agent Ledbetter and Brown, the insurance representative, that the case was submitted to the court.

On the morning of the trial the court announced that it had received a letter advising that Mr. Groffel had terminal cancer and would be unable to attend the trial. This left the government without its key witness who had been subpoenaed to bring the original records, but the government attorney nonetheless elected to go to trial saying that he had only received his copy of that letter that morning. After the three witnesses indicated above had testified the government attempted to put on two other witnesses, but the court rejected any testimony from them because their names had not been submitted to defense counsel as ordered by the court. When the government rested its case the court took a twenty-minute recess. Defendant and his attorneys counselled during this interim and announced that defendant did not desire to put on any defense. The court cautioned defense counsel that before they made that as their final statement he had considered on the present testimony that the same sufficed to show defendant's possession of the Cadillac and the further fact that the motor vehicle moved in and was a part of interstate commerce. He suggested that by reason of his thinking they should deal with the question of whether there was any willful knowledge that the Cadillac was stolen, that this fact is based on circumstantial evidence in this case and that defendant did not stand well because of his conflict of stories. The court stated that it did not want the defense to close or conclude their evidence unless they were aware of the fact that the court so regarded the evidence.

Despite this suggestion on the part of the court, defendant refused to put on any testimony although some nineteen witnesses had been subpoenaed.

*Admissibility of the evidence.*

 The testimony of insurance agent Brown and FBI Agent Ledbetter, relating to the issue of whether the vehicle was stolen, was to a large extent hearsay. United States v. Hood, 422 F. 2d 737 (7th Cir.), cert. denied, 400 U.S. 820, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970); United States v. Johnson, 413 F.2d 1396 (5th Cir. 1969); United States v. Graham, 391 F.2d 439 (6th Cir.), cert. denied, 393 U.S. 941, 89 S.Ct. 307, 21 L. Ed.2d 278 (1968). However, absent objections hearsay evidence is treated as being properly admitted and the court may give it such probative effect and value as it is entitled to. Washington v. United States, 326 F.2d 585 (8th Cir. 1964). Further, an objection to the introduction of testimony must be timely or it will be held to have been waived. It is discretionary with the trial judge to sustain or overrule a motion to strike delayed until the close of the government's case. For an excellent discussion of the law in this area, see Judge Matthes' opinion in Isaacs v. United States, 301 F.2d 706 (8th Cir.), cert. denied, 371 U.S. 818, 83 S.Ct. 32, 9 L.Ed. 2d 58 (1962).

 There was never any objection to or any motion to strike the FBI agent's testimony; hence, it was properly before the court. Upon considering the ruling on the objections to insurance agent Brown's testimony made at the close of the government's case and the motion to strike made at the same time, we find that the trial judge committed no error. The objections being general, we look to see if there was any purpose for which the evidence could have been properly admitted. The evidence here was properly admissible to prove other elements of this offense. See, United

States v. Wolosyn, 411 F.2d 550 (9th Cir. 1969). Hence, for this reason and because they were not timely, the objections as to relevance and materiality were properly overruled. Since the evidence was properly before the court, it could be given its natural probative effect as if it were in law admissible.

*Sufficiency of the evidence.*

 Although defendant attacks the sufficiency of the evidence, we are mindful of the principle that an offense may be proved by circumstantial evidence and that the verdict must be sustained if there is substantial evidence to support it. United States v. Robinson, 419 F.2d 1109, 1111 (8th Cir. 1969). *Robinson* is another most thorough opinion by Judge Matthes sitting with Judge Blackmun (now Mr. Justice Blackmun) and Judge Bright. It was a Dyer Act case in which Judge Matthes cited a numerosity of Eighth Circuit cases as well as some from the Supreme Court in which it was pointed out:

". . . [A]n offense may be proved by, and the conviction rest upon, circumstantial evidence. (Citations omitted.)

". . . [T]he verdict . . . must be sustained if there is substantial evidence, taking the view most favorable to the government, to support it, (citations omitted). . . .

. . . . . .

". . . It is settled law that the plain error rule should be applied with caution, and invoked only to avoid a miscarriage of justice."

In Washington v. United States, *supra* (326 F.2d at 588), this court held, assuming arguendo that the foreman's testimony was not properly admissible for reason of hearsay, the jury was bound to give this testimony the same force and effect as if it had been legally admissible by reason of failure of appellant to object thereto.

A canvass of the original record and the transcript convinces us that this case cannot be equated with those in which the prosecution merely rested on an NCIC report because there is much more than the police reports in evidence. There is proof positive that the insurance company paid the loss by reason of the Cadillac having been stolen in St. Louis in July of 1970 and shortly thereafter coming into defendant's possession in Fayetteville, Arkansas. The Cadillac was taken without the owner's permission. Shortly thereafter, according to defendant's voluntary admission it was delivered to him in Fayetteville, Arkansas. Defendant recognizes the rule in United States v. Brady, 425 F.2d 309 (8th Cir. 1970), that possession in one state of property recently stolen in another, if not satisfactorily explained is ordinarily a circumstance which creates a fact question as to whether or not the person receiving the vehicle knew it was stolen, but argues that this inference of guilty knowledge grows weaker as time of possession recedes from time of theft. The Cadillac was stolen in St. Louis on July 21, 1970 and almost immediately turned up in Fayetteville, Arkansas in defendant's possession. It remained in his possession until recovered. It had not been registered or licensed in Arkansas. Additionally, he had the bill of sale dated one day prior to the date the Cadillac was stolen listing the seller as Conley Motor Company, a company which apparently does not exist, and in fact the address given for Conley Motor Company is a vacant lot. These facts also support the finding that the vehicle was still in interstate commerce. Babb v. United States, 351 F.2d 863 (8th Cir. 1965).

Additional to the admissions of defendant of his possession of the Cadillac and to the telling of two conflicting stories as to who delivered the car to him, both in Fayetteville, Arkansas immediately after the car was reported stolen, there is such evidence as the fact that Brown, a witness for the government, knew of his own knowledge the condition of the Cadillac upon recovery; what his company did with it by way of settlement of the claim and selling it to a dealer in Milwaukee; and other evidence

of such nature which is not in fact hearsay evidence.

The testimony of the FBI agent alone is sufficient to justify a conviction in this case unless we are to depart from settled law. Consequently, we have no alternative under the facts but to hold that the car was stolen, that it moved in interstate commerce, and that defendant received it with knowledge that it was a stolen vehicle.

There is no explanation as to why the government attorney failed to list some witnesses who had been subpoenaed after the court had ordered him to do so and furnish same to defendant. Certainly it was a tactical maneuver by defendant to decide not to offer any proof whatsoever although he had subpoenaed some nineteen witnesses. This was done after the judge suggested that they be apprised of his view of the case as it stood and the suggestion that they not submit the case without offering any evidence in the light of his tentative thinking. Our conclusion is that the evidence adduced amply supports the conviction.

The judgment of conviction is affirmed.