GARY W. LYNCH, J.
*368 D.K.T. ("Father") appeals from the judgments terminating his parental rights to his children, D.S.H. and D.M.H. (referred to collectively as "the Children"), on the statutory grounds of abuse and neglect and failure to rectify.[1] See section 211.447.5(2)-(3).[2] He raises four points on appeal, challenging the denial of his request for a continuance (point 1), the admission of certain hearsay testimony (point 2), and the sufficiency of the evidence supporting some of the statutory grounds for termination (points 3 and 4). Finding merit in Father's second point and that the resolution of that point is dispositive of this appeal, we reverse the trial court's judgments and remand for a new trial.
Factual and Procedural Background
In reviewing a judgment terminating parental rights, we view the evidence and reasonable inferences that can be drawn therefrom in the light most favorable to the trial court's judgment. In re S.M.H. , 160 S.W.3d 355, 362 (Mo. banc 2005).
D.M.H. and D.S.M. were born in September 2012 and December 2013, respectively. In the period of time between their births, Father was arrested and charged with felony cocaine possession. He later pleaded guilty to the charge and, in February of 2015, was sentenced as a prior drug offender to a term of ten years in the Department of Corrections.
Thereafter, on October 9, 2015, the Children's Division of the Department of Social Services, citing parental neglect, placed the Children into protective care. On December 19, 2016, the Greene County Juvenile Officer ("the Juvenile Officer") filed petitions ("the TPR petitions") to terminate Father's parental rights to the Children and the parental rights of the Children's mother ("Mother"), who thereafter died before trial.
The trial on the TPR petitions took place on December 12, 2017. Among the Juvenile Officer's evidence were Child Advocacy Center records ("the CAC records"), which included video interviews of the Children's half siblings by Mother, L.R., Jr., and J.H. (referred to collectively as "the half-siblings"), detailing abuse allegations against Father. According to their statements, Father would "beat up" Mother using brass knuckles. L.R., Jr., witnessed Father "punch [Mother] in the arm, kick [Mother] in the legs, and pull [Mother]'s hair." During one such incident, Father "pointed a gun at [L.R., Jr.,] and told him he would kill him." Father also physically abused L.R., Jr., in that he "hit [him] in the head with a metal hanger" and "hit [him] in the leg[,]" causing bleeding and bruising, respectively. J.H. "reported having to bite [Father] and stabbing him with a butter knife when he was beating up [Mother]."
Father objected to the admission of the CAC records, arguing that the half-siblings' statements were hearsay and that "[t]he P.K.A. case, which provides for a child hearsay exception, ... does not extend to children who are not the subject of the instant litigation[.]" This objection was overruled, and the CAC records were received into evidence.
The trial court thereafter entered judgments terminating Father's parental rights to the Children. In each, the trial court concluded, inter alia , that termination of Father's parental rights was supported under the statutory grounds of section 211.447.5(2) (abuse and neglect) and section *369 211.447.5(3) (failure to rectify). Regarding section 211.447.5(2), the trial court found that termination was supported under subsections (c) physical, emotional, or sexual abuse, and (d) failure to provide adequate parental support. Relying on the CAC records, the trial court found that "[the half-siblings'] disclosures of physical and emotional abuse to be consistent and credible" and found Father's testimony to the contrary not credible.
Father timely appeals and presents four points for our review. Father's second point is addressed first and is dispositive.
Discussion
Point 2 - Trial Court Abused its Discretion in Admitting the CAC Records
In his second point, Father contends that "[t]he trial court erred in admitting [the CAC] records concerning allegations of abuse made by [the half-siblings] because admitting such evidence was an abuse of discretion in that the records were inadmissible hearsay that did not come within any recognized hearsay exception." Father also asserts the erroneous admission of these statements prejudiced him, thereby requiring that the trial court's judgments "be reversed and [the cases] remanded for a new trial."
"[S]ubstantial deference is given to the trial court's determinations regarding the admissibility of evidence, which will not be disturbed absent an abuse of discretion." Dodson v. Ferrara , 491 S.W.3d 542, 552 (Mo. banc 2016) (internal citations omitted). Moreover, we review the admission of evidence for prejudice, not mere error. White v. R.L. Persons Constr., Inc. , 503 S.W.3d 339, 345 (Mo. App. S.D. 2016).
Generally, courts exclude hearsay because the out-of-court statement is not subject to cross-examination, is not offered under oath, and is not subject to the fact finder's ability to judge demeanor at the time the statement is made. However, exceptions to the general prohibition against hearsay may apply when circumstances conspire to assure the trustworthiness of the declarant's statement despite the absence of cross-examination, the oath, and the fact finder's ability to observe the declarant's demeanor.
Bynote v. Nat'l Super Markets, Inc. , 891 S.W.2d 117, 120 (Mo. banc 1995).
Father and the Juvenile Officer both recognize and acknowledge that the CAC records constituted hearsay and that, to be admissible, must fall within a recognized hearsay exception. What the parties dispute, however, is the applicability of the hearsay exception articulated in In re Marriage of P.K.A. , 725 S.W.2d 78 (Mo. App. S.D. 1987) ("the P.K.A. exception").
The P.K.A. exception "applies to non-jury sexual abuse cases where (1) the best interest of the child is the primary concern; (2) sexual abuse may have occurred, or has been threatened; (3) the child might not be competent or reasonably expected to testify to it; and (4) there is a substantial basis that the statements are true. In Interest of S.M. , 750 S.W.2d 650, 654 (Mo. App. E.D. 1988) (citing P.K.A. , 725 S.W.2d 78 ). The exception has been expanded to also include statements of physical or emotional abuse. In re A.A.T.N. , 181 S.W.3d 161, 170 (Mo. App. E.D. 2005) ; see also Hord v. Morgan , 769 S.W.2d 443, 447 (Mo. App. W.D. 1989).
Father argues that the P.K.A. exception does not apply to the half-siblings' statements and posits two reasons in support. First, the alleged abuser in P.K.A. was the parent of the declarant child, whereas here the alleged abuser is not related to the *370 declarant half-siblings. Second, the best interests of the declarant child was at issue in P.K.A. , whereas the best interests of the declarant half-siblings here were not at issue before the trial court.
P.K.A. and every Missouri case thereafter applying the P.K.A. exception to affirm the trial court's admission of a child's hearsay statement involved a parent of the declarant child, and the declarant child's best interest was at issue in the proceeding. In re B.M.O. , 310 S.W.3d 281, 287 (Mo. App. S.D. 2010) (termination of mother's parental rights to her declarant children); Pope v. Child Abuse & Neglect Review Bd. , 309 S.W.3d 362, 366 (Mo. App. E.D. 2010) (Child Abuse and Neglect Review Board administrative determination that father abused his declarant daughter); In re A.A.T.N. , 181 S.W.3d 161, 169 (Mo. App. E.D. 2005) (termination of father's rights to his declarant daughter)[3] ; D.L.H. v. H.T.H. , 780 S.W.2d 104, 105 (Mo. App. E.D. 1989) (parents' dissolution of marriage custody proceeding involving declarant son's observations of his father's abusive conduct); Hord v. Morgan , 769 S.W.2d 443, 446 (Mo. App. W.D. 1989) (parents' modification of custody involving declarant son's abusive interaction with his father); In Interest of W.J.D. , 756 S.W.2d 191, 196 (Mo. App. S.D. 1988) (juvenile abuse and neglect proceeding removing declarant children from their father's custody); In Interest of S.M. , 750 S.W.2d 650, 654 (Mo. App. E.D. 1988) (parents' motion to modify custody and related juvenile abuse and neglect proceeding involving declarant children's abuse by their father); P.K.A. , 725 S.W.2d at 81 (motion for contempt and modification of custody involving declarant son's abuse by his father).
The Juvenile Officer does not dispute Father's asserted factual differences with P.K.A. and its progeny,[4] but argues that *371 the P.K.A. exception should be extended to include the half-siblings' statements. In support, he points to the language of section 211.447.5(2)(c), which was at issue as a statutory basis for terminating Father's parental rights in light of the trial court's findings of Father's physical and emotional abuse.
As provided by section 211.447.5(2)(c):
5. The Juvenile Officer or the division may file a petition to terminate the parental rights of the child's parent when it appears that one or more of the following grounds for termination exist:
* * *
(2) The child has been abused or neglected. In determining whether to terminate parental rights pursuant to this subdivision, the court shall consider and make findings on the following conditions or acts of the parent:
* * *
(c) A severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent, including an act of incest, or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed toward the child or any child in the family [.]
(Emphasis added).
The Juvenile Officer argues that the half-siblings qualified as "any child in the family," as that language is used in section 211.447.5(2)(c), in that they are related to the Children through having a common mother and Father's admission that he sold drugs to get a bigger place to live because Mother had five children. According to Father, "when you take -- when you take over a woman, you just don't take the woman herself. You've got to take to go with -- something to go with the woman, see, so she had these kids before." Assuming, without deciding, that the half-siblings are each a "child in the family" as used in section 211.447.5(2), that section, nevertheless, does not address the admissibility of any particular evidence purporting to prove acts of abuse by a parent toward a child in the family.
Rather, section 211.447.5(2)(c) merely makes evidence of acts of abuse toward "any child in the family" by a parent or with the knowledge of a parent involved in the proceeding relevant to a determination of neglect under section 211.447.5. Nothing in that statute purports to transform otherwise inadmissible hearsay into admissible evidence of abuse. Of course, relevancy is a threshold issue for the admission of any hearsay evidence. See Kroeger-Eberhart v. Eberhart , 254 S.W.3d 38, 44 (Mo. App. E.D. 2007) (holding trial court did not abuse its broad discretion in excluding out-of-court statements alleging abuse of two children who were not the subject of the proceedings as irrelevant, and given that holding, finding no need to further consider the trial court's exclusions of evidence based on claims of hearsay and privilege). But even if relevant to an issue before the trial court, hearsay evidence must, nevertheless, come within a recognized exception to the general prohibition against its admission into evidence. Bynote , 891 S.W.2d at 120.
"Like all other jurisdictions, Missouri grounds its hearsay exceptions in trustworthiness." State v. Bell , 950 S.W.2d 482, 486 (Mo. banc 1997) (Limbaugh, J. concurring opinion, citing *372 By note , 891 S.W.2d at 120 ). We addressed trustworthiness in P.K.A. when we stated, "Where there is a substantial basis to believe that the statements of the child are true, courts are justified in hearing and considering them to prevent further or potential abuse to a child." Id. (emphasis added). We also observed that
[f]lexibility is needed in these cases, even where the child might be qualified to testify, because of the emotional trauma that such an experience may cause. It is desirable to avoid the necessity of forcing a young child to testify as to abuse, particularly when the abuser is the victim 's parent.
Id. These basic trustworthiness dynamics are readily apparent in the context of an alleged abusing parent and his or her declarant child in a proceeding where that parent may maintain or be granted custody of or visitation with that child based upon that child's best interests. The parent-child relationship gives rise to extensive legal rights and responsibilities for both the parent and the child, has a sense of permanency, and is emotionally intense. Depending upon the specific surrounding circumstances, the declarant child's out-of-court statement given outside the presence of the alleged abusing parent may be much more trustworthy, accurate, and reliable than that child's in-court testimony given in the presence of that parent, who, if that child is not believed or due to other mitigating factors, may continue as or become that child's custodian or may have visitation with that child. These dynamics, constrained by the parent-child relationship and the best interests of the child in that relationship, can be evaluated and weighed by the trial court in considering and determining the admission of that child's hearsay statements under the P.K.A. exception.
On the other hand, the Juvenile Officer proffers no trustworthiness rationale for extending the P.K.A. exception to the half-siblings' statements in this case, and we discern none. Here, the basic P.K.A. trustworthiness dynamics are completely missing because the declarant half-siblings have no parent-child relationship with the alleged abuser, the alleged abuser has no legal right to or potential for future custody or visitation with the half-siblings,[5] and the half-siblings' best interests are not an issue in the proceeding before the trial court. In the absence of these trustworthiness dynamics and their constraints upon the trial court's trustworthiness inquiry, a declarant child's statement should not come within the P.K.A. exception. This is so because the trustworthiness of that statement is no different than that of any other hearsay statement that is generally not admissible "because the out-of-court statement is not subject to cross-examination, is not offered under oath, and is not subject to the fact finder's ability to judge demeanor at the time the statement is made." Bynote , 891 S.W.2d at 120. The trial court erred in admitting the half-siblings' hearsay statements.
This error only requires reversal, however, if Father was prejudiced by the admission of these statements into evidence.
The trial court in a court-tried case is allowed wide latitude in the admission of evidence because it is presumed that it will not give weight to evidence that is *373 incompetent. Because of this presumption, it is difficult to base reversible error on the erroneous admission of evidence in a court-tried case. This court presumes on review that inadmissible evidence is not prejudicial unless it is clear the trial court relied on that evidence in arriving at its findings of fact and conclusions of law.
S.F.M.D. v. F.D. , 477 S.W.3d 626, 644 (Mo. App. W.D. 2015) (quoting Lee v. Lee , 967 S.W.2d 82, 86 (Mo. App. W.D. 1998) (internal citations omitted) ).
Father asserts he was prejudiced by the erroneous admission of the half-siblings' hearsay statements because they "constitute the only evidence presented of Father's alleged [abuse,] the allegations [in the statements] were ultimately found to be true by the trial court[,] and [those findings] permeate the Judgment[s] terminating Father's rights." The Juvenile Officer does not dispute these assertions or direct us to anything contrary in the record on appeal.
We agree with Father that the trial court's judgments are permeated with findings of fact about Father's physical and emotional abuse that were supported only by the half-siblings' hearsay statements, including expressly providing factual support for each of the two grounds found for termination and the best interests determination for termination. It is clear in the trial court's judgments that it relied on the erroneously admitted half-siblings' hearsay statements in arriving at its findings of fact and conclusions of law based thereon, and that this reliance, therefore, prejudiced Father. See S.F.M.D. v. F.D. , 477 S.W.3d at 644. The trial court's erroneous admission of this prejudicial hearsay evidence was an abuse of discretion. Father's second point is granted.
Points 1, 3 and 4 are Moot
Because the grant of Father's second point requires reversal of the trial court's termination judgments and remand for a new trial, Father's other three points are moot and need not be addressed.
Decision
The trial court's judgments terminating Father's parental rights to D.S.H. and D.M.H. are reversed, and both cases are remanded to the trial court for a new trial in accordance with this opinion.
DON E. BURRELL, JR., P.J. - concurs
NANCY STEFFEN RAHMEYER, J. - concurs

SD35445 and SD35446 have been consolidated for all purposes on appeal.

All statutory references to section 211.447 are to RSMo Cum.Supp. 2014.

The father's hearsay challenge to his daughter's statements of physical and emotional abuse in A.A.T.N. also included his step-daughter's statements of his physical and emotional abuse. A.A.T.N. , 181 S.W.3d at 169. As subsequently observed by the Eastern District of our court, however,
[i]n A.A.T.N. , it appears the other child whose hearsay statements were admitted was also the subject of a termination-of-parental-rights proceeding along with her half-sister, A.A.T.N. A.A.T.N. , 181 S.W.3d at 165 ("The Juvenile Officer presented the testimony of [the children's therapist and their caseworker], both of whom testified that termination was in the best interests of the children. ") (Emphasis added).
Kroeger-Eberhart v. Eberhart , 254 S.W.3d 38, 43 (Mo. App. E.D. 2007). Apparently, therefore, the best interests of both children were at issue before the trial court in A.A.T.N. Further, the father's sole challenge to the children's statements was that the P.K.A. exception should be limited to cases of sexual abuse, and should not apply in cases of physical or emotional abuse. A.A.T.N. , 181 S.W.3d at 170. The A.A.T.N. court disagreed with the father's asserted limitation and extended the P.K.A . exception to include cases of physical or emotional abuse. Id. The father raised no other or separate challenge to the step-daughter's statements based upon his lack of a familial relationship to her or that her best interests were not at issue in A.A.T.N.'s termination proceeding that the trial court was hearing simultaneously with the step-daughter's termination proceeding, both of which involved their common mother. Moreover, the A.A.T.N. court alternatively held that even if the children's statements were inadmissible hearsay, as father contended, the father was not prejudiced by their erroneous admission because they were merely cumulative to other admitted evidence. Id. In this context, nothing in A.A.T.N. 's holding can be read as extending the P.K.A. exception in any manner other than, at best, to include cases of physical or emotional abuse.

The Juvenile Officer observes in his brief, without any other discussion, explanation, or analysis that "[i]n [A.A.T.N. ], the Court held that the statements of physical abuse and emotional abuse of a half-sibling, who was also the subject of a termination action, are admissible under this hearsay exception." A closer inspection of A.A.T.N. reveals, however, that it cannot be read as generally extending the P.K.A. exception to half-sibling hearsay statements of abuse by a non-parent. See footnote 5, supra.

Nothing in the record supports that Father has ever asserted a claim for or been granted a right of third-party custody of or visitation with either or both half-siblings. See e.g. , In re T.Q.L. , 386 S.W.3d 135, 137 (Mo. banc 2012). The impact of third party custody or visitation upon the P.K.A. exception analysis, therefore, need not be addressed and is reserved for a future case with a relevant and appropriate record upon which to decide that issue.