In the Missouri Court of Appeals
 Eastern District
 DIVISION THREE

 ) No. ED109317
 )
 IN THE INTEREST OF: T.D.S., JR. ) Appeal from the Circuit Court of
 ) the City of St. Louis
 )
 ) Honorable Barbara T. Peebles
 )
 )
 ) Filed: October 26, 2021

 Introduction
 T.D.S., Jr. (“Appellant”) appeals the order of the Juvenile Division of the 22nd Circuit

(“juvenile court”) granting the Juvenile Office’s motion to dismiss their petition and transfer

Appellant’s case from the juvenile court to a court of general jurisdiction.

 Appellant raises two points on appeal. First, Appellant argues the juvenile court clearly

erred and abused its discretion in admitting, over Appellant’s objections, hearsay evidence through

the testimony of deputy juvenile officer Jaunell Pugh. Second, Appellant argues the juvenile court

clearly erred and abused its discretion in granting the Juvenile Office’s petition to allow

prosecution of Appellant as an adult under the totality of the circumstances.

 Factual and Procedural Background
 Appellant was seventeen when he was certified for prosecution as an adult for crimes

committed when he was sixteen. On January 5, 2020, Appellant allegedly stole a vehicle at
gunpoint and led police officers on a chase through St. Louis City into St. Louis County. Appellant

was in the custody of the Juvenile Detention Center until March 30, 2020, when he was released

under the conditions he meet at least weekly with the assigned deputy juvenile officer, remain in

home detention with his mother under GPS monitoring; enroll in an appropriate alternative

education program within two weeks or find suitable employment; have no contact with a named

associate or the witnesses and victims of his alleged offenses; stay five hundred feet away from

the Central West End neighborhood; and promptly notify the assigned deputy juvenile officer of

any change of address or phone number or detention by law enforcement. The Juvenile Office filed

a petition alleging Appellant violated his release by leaving home (when his mother’s firearm went

missing), failing to stay in touch with his juvenile officer, and contacting the named associate. The

juvenile court issued an apprehension order. While that order was pending, Appellant was arrested

for an unrelated offense and charged in adult court for assault, robbery, and armed criminal action.

 On August 4, 2020, the Juvenile Officer moved to dismiss the petition to allow prosecution

of Appellant under general law. The motion argued Appellant was not a proper subject of the

juvenile code. The juvenile court held a certification hearing on September 21, 2020, in St. Louis

City. Deputy Officer Pugh testified for the Juvenile Office. His report, prepared under section

211.071,1 was admitted without objection. Over Appellant’s hearsay objections, Pugh testified to

the facts supporting his recommendation Appellant be certified as an adult, including his

understanding of Appellant’s criminal charges from the carjacking, his conversations with

Appellant’s mother regarding his academic performance and problems at home, and GPS records

showing Appellant left home without permission.

1
 All statutory references are to RSMo (2020), unless otherwise indicated.

 2
 On October 20, 2020, the juvenile court granted the Juvenile Office’s motion to dismiss

and transfer the matter to a court of general jurisdiction. The juvenile court found certification was

appropriate because Appellant’s felony robbery and resisting arrest charges demonstrated a need

to protect the community. The court found Appellant’s robbery “involved viciousness, force, and

violence” and “an offense against the person.” Because Appellant had been subject to five prior

referrals and faced new charges reflecting “a high level of sophistication due to their complexity

and high level of criminality,” the court found him “beyond rehabilitation under the juvenile code.”

The court found Appellant demonstrated behavior and criminal aptitude not typically seen in

juveniles and required treatment in a setting unavailable in the juvenile system.

 Appellant was 17 years, 6 months at the time of the certification hearing. The court found

rehabilitation in the juvenile system impossible because the Division of Youth Services could

retain jurisdiction only until the age of eighteen.

 This appeal follows. Additional facts and procedural history will be included to address

Appellant’s claims.

 Discussion
 Point I: Deputy Officer Pugh’s Hearsay Testimony
 1. Standard of Review
 Appellate review of a juvenile court's decision to terminate jurisdiction over a youthful

offender is limited to determining whether in the totality of the circumstances the court abused its

discretion. State v. Woodworth, 941 S.W.2d 679, 697 (Mo. App. W.D. 1997) (citing In Int. of

A.D.R., 603 S.W.2d 575, 580-81 (Mo. banc 1980)).

 We also review a trial court’s admission of evidence for an abuse of discretion. State v.

Gyunashev, 592 S.W.3d 836, 839 (Mo. App. E.D. 2020) (citing State v. Hunt, 451 S.W.3d 251,

 3
263 (Mo. banc 2014) (per curiam)). The U.S. Supreme Court “has never attempted to prescribe

criteria for, or the nature of quantum of evidence that must support, a decision to transfer a juvenile

for trial in an adult court.” A.D.R., 603 S.W.2d at 580 (quoting Breed v. Jones, 421 U.S. 519, 537

(1975)). “[S]ubstantial deference is given to the trial court's determinations regarding the

admissibility of evidence, which will not be disturbed absent an abuse of discretion.” Int. of D.S.H.

v. Greene Cnty. Juv. Officer, 562 S.W.3d 366, 369 (Mo. App. S.D. 2018) (quoting Dodson v.

Ferrara, 491 S.W.3d 542, 552 (Mo. banc 2016)). An abuse of discretion exists where “the trial

court's ruling is so unreasonable and arbitrary that it shocks the sense of justice and is clearly

against the logic of the surrounding circumstances.” Alberswerth v. Alberswerth, 184 S.W.3d 81,

100 (Mo. App. W.D. 2006) (citing Eltiste v. Ford Motor Co., 167 S.W.3d 742, 757 (Mo. App.

E.D. 2005)).

 We review the admission of evidence for prejudice, not mere error. D.S.H., 562 S.W.3d at

369 (citing White v. R.L. Persons Constr., Inc., 503 S.W.3d 339, 345 (Mo. App. S.D. 2016)).

 2. Analysis
 At Appellant’s certification hearing, Pugh testified to his understanding of the charges

against Appellant. Pugh’s testimony was based upon his review of charging documents and police

reports prepared by others. Pugh explained Appellant had been charged with “robbery in the first

degree, a Class A felony, and resisting arrest, which is a class E felony.” Pugh added he understood

Appellant was apprehended following “a long high-speed chase.” Appellant objected because

Pugh, who never talked to the victim or the arresting officers, lacked firsthand knowledge of the

crimes. Appellant’s trial counsel argued Officer Pugh could only testify to the charges themselves.

The court overruled the objection, allowing Pugh to describe the events in greater detail, including

his understanding the carjacking involved the use of a weapon and the victim identified Appellant

 4
as a participant. Over a continuing objection to “any and all hearsay statements” made by Pugh,

he described Appellant’s mother’s statements about Appellant’s behavior at home. Pugh also

testified to Appellant’s academic performance based on academic records for which there was no

business records affidavit to satisfy the business records hearsay exception. Section 490.692.

Testimony regarding the GPS records was also unaccompanied by a business records affidavit.

 Appellant argues the juvenile court’s reliance on hearsay evidence regarding the facts of

the offense, Appellant’s behavior at home, his academic performance, and whereabouts

ascertainable through GPS tracking information to certify Appellant as an adult creates the definite

and firm impression a mistake has been made.

 Appellant notes a certification hearing is a critically important proceeding. Kent v. United

States, 383 U.S. 541, 560 (1966). Appellant also notes Missouri law provides children special

rights and immunities in criminal prosecution. State ex rel. D.V. v. Cook, 495 S.W.2d 127, 128

(Mo. App. W.D. 1973). Appellant argues this protection should be extended to prohibit reliance

on hearsay evidence at certification proceedings to protect a juvenile’s right to due process and

fairness.

 Appellant conceded at oral argument he can cite no authority prohibiting hearsay at a

certification hearing. However, Appellant argues certification hearings are analogous to

proceedings terminating parental rights, at which hearsay is inadmissible. D.S.H., 562 S.W.3d at

371. Appellant also argues certification hearings are similar to probation revocation hearings,

where applicable due process rights forbid reliance upon hearsay to revoke probation. In re

Carson, 789 S.W.2d 495, 495 (Mo. App. S.D. 1990). Appellant urges the minimal due process

required at juvenile certification proceedings “should require more” than these other proceedings.

 5
 The State does not dispute Pugh’s testimony contained hearsay. The State instead asserts

juveniles have no right to be treated in the juvenile justice system because children deemed

improper subjects for this system, at the juvenile court’s discretion, may be prosecuted under the

general law. A.D.R., 603 S.W.2d at 579. Section 211.071. Because there is no right to proceeding

under the juvenile law, the State argues, the full panoply of constitutional rights is not applicable

in a certification proceeding.

 The State cites Judge Zel Fischer’s dissent in D.E.G. v. Juv. Officer of Jackson Cnty. for

the proposition the general rules of evidence do not apply to juvenile certification proceedings.

601 S.W.3d 212, 230 (Mo. banc 2020) (Fischer, J., dissenting).2 Judge Fischer cited, and the State

asks us to follow, holdings of federal and state courts interpreting their own statutes to allow

hearsay evidence in juvenile certification hearings. See, e.g., U.S. v. SLW, 406 F.3d 991 (8th Cir.

2005).

 The State asks us to imply an allowance of hearsay by construing section 211.071, given

section 211.068, which allows a prosecutor to testify at a certification hearing as to the likelihood

of prosecution under general law, because “the Juvenile Code is a complete law, and each section

is to be read and construed in relation to the others.” State v. Williams, 473 S.W.2d 382, 383 (Mo.

1971). The State also argues if the legislature intended to prohibit hearsay testimony in certification

proceedings, it would have said so in the statute.

2
 Judge Fischer’s dissent in D.E.G. discussing the rules of evidence in juvenile certification proceedings is dicta. The
majority opinion held a juvenile has the statutory right to appeal any final juvenile division judgment. The majority
opinion does not address whether hearsay is admissible in a juvenile certification proceeding. D.E.G., 601 S.W.3d at
219-220.

 6
 Finally, the State points us to Missouri Supreme Court Rule 116.02, 3 which requires

application of the rules of evidence to all hearings “involving adjudication.” Both the State and

Appellant agree a certification hearing is not an adjudicatory hearing. Therefore, the State argues,

the Missouri Supreme Court does not require the rules of evidence apply to juvenile certification

hearings. As a result, both the written report required by section 211.071 and testimony by the

juvenile officer who prepared it should be admitted, including components which will “invariably”

include hearsay.

 In reply, Appellant argues the Missouri Supreme Court is barred from enacting rules

suspending the applicability of the laws of evidence by article V, section 5 of the Missouri

Constitution, which prohibits the Supreme Court from implementing any court rules that change

substantive rights or the law relating to evidence. Appellant also argues construing Rule 116.02 to

exclude certification hearings from strict application of the rules of evidence violates Rule 110.02,

which provides the rules governing juvenile courts “shall be construed to assure simplicity and

uniformity in judicial procedure and fairness in the administration of justice and to conduce to the

welfare of the juvenile and the best interests of the state.”

 A. Hearsay is Admissible in Juvenile Certification Hearings

 Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. State

v. Cole, 483 S.W.3d 470, 474 (Mo. App. E.D. 2016) (citing State v. Howard, 913 S.W.2d 68, 70

(Mo. App. E.D.1995)). Hearsay is generally inadmissible unless it falls within a recognized

exception. Id.

3
 All rule citations are to the Missouri Supreme Court Rules (2020), unless otherwise indicated.

 7
 The parties agree the admissibility of hearsay evidence in a juvenile certification hearing

is a matter of first impression in our courts.4

 A certification hearing is a critically important proceeding. Kent, 383 U.S. at 560 (1966).

Appellant correctly notes juveniles receive special protections under Chapter 211. D.V., 495

S.W.2d at 128. However, these rights are subject to the court’s determination at a certification

hearing the juvenile is not the proper subject to be dealt with under juvenile law. Section 211.071.4;

See also D.V., 495 S.W.2d at 128. (“This shield can be pierced.”). If the Court finds the juvenile

is not a proper subject, the petition will be dismissed to allow prosecution of the juvenile under

general law. Id.

 We begin our analysis discussing the statutory framework. Chapter 211 prescribes

procedures for proceedings in the juvenile system. Section 211.011. The process for certification

of a juvenile for trial as an adult is set out in section 211.071. The statute demands a written report

“shall be prepared” which fully develops “all available information relevant to the criteria which

shall be considered by the court in determining whether the child is a proper subject” of the juvenile

system and “whether there are reasonable prospects of rehabilitation within the juvenile justice

system.” Section 211.071.6 (emphasis added). The section provides these criteria include, but are

not limited to, a list of ten factors. Id. These factors include the characteristics of the juvenile’s

offense; the juvenile’s history, behavior, age, and sophistication; the program and facilities

available to the juvenile court; whether the child could benefit from the programs available to the

juvenile court; and racial disparity. Id. In assessing these factors, the juvenile court is entitled to

4
 “[T]he issue of whether hearsay testimony is admissible at a juvenile certification proceeding is a matter of first
impression for Missouri courts and is certainly generally interesting and important and should be decided by this
Court.” D.E.G., 601 S.W.3d at 231 (Fischer, J., dissenting).

 8
significant discretion in reaching its certification determination. Woodworth, 941 S.W.2d at 697

(citing A.D.R., 603 S.W.2d at 580-81).

 In statutory construction, we give meaning to every word, clause, sentence and section of

a statute and do not interpret a statute in a way that would render some phrases “mere surplusage.”

State v. Acevedo, 339 S.W.3d 612, 617 (Mo. App. S.D. 2011) (quoting State v. Graham, 149

S.W.3d 465, 467 (Mo. App. E.D. 2004)). We interpret the second use of “shall” and its surrounding

language in section 211.071.6 to mean the court must consider the juvenile officer’s report which

must contain all available information relevant to the court’s consideration in making a

certification determination. Coney v. State, 491 S.W.2d 501, 511 (Mo. 1973) (“[Section 211.071,

RSMo 1954] vests in the juvenile judge a discretion, after receiving the investigation report and

hearing evidence, to determine whether the juvenile before him is a proper subject to be dealt with

under the juvenile code[.]”). The report should therefore be comprehensive and the juvenile court

should consider the report in its entirety. The juvenile officer’s testimony, in addition to the report

itself, is relevant evidence for the juvenile court’s consideration. State v. Whitfield, 947 S.W.2d

537, 539 (Mo. App. E.D. 1997) (affirming juvenile court’s certification based on juvenile officer’s

hearsay testimony received without objection).

 We conclude this without adding language to section 211.071. The State asks us to interpret

section 211.071, given section 211.068’s allowance of hearsay in testimony by prosecutors

regarding prosecution under the general law, because “the Juvenile Code is a complete law, and

each section is to be read and construed in relation to the others.” State v. Williams, 473 S.W.2d

382, 383 (Mo. 1971). This direction does not require us, as the State suggests, to add language to

section 211.071 by reference to other sections. Although we are instructed to construe the Juvenile

Code liberally, “such liberal construction cannot be utilized to give the juvenile court jurisdiction

 9
and powers not conferred upon it by statute.” B. L. W. by Ellen K. v. Wollweber, 823 S.W.2d 119,

121 (Mo. App. S.D. 1992) (citing In Int. of M.K.R., 515 S.W.2d 467, 470 (Mo. banc 1974)). The

primary rule of statutory construction is to ascertain the intent of the legislature from the language

used, to give effect to that intent if possible, and to consider words used in the statute in their plain

and ordinary meaning. State v. Kraus, 530 S.W.2d 684, 685 (Mo. banc 1975) (citing State ex rel.

Dravo Corp. v. Spradling, 515 S.W.2d 512 (Mo. 1974)). Section 211.071 requires a written report

containing “all available information” relevant to the criteria the court shall consider in a

certification hearing. Such a report will, by necessity, contain hearsay. The plain meaning of the

instruction in section 211.071 allows the court to consider hearsay evidence. See State v. Wright,

456 N.W.2d 661, 664 (Iowa 1990).

 Next, we address Appellant’s due process arguments. Section 211.071, as we have

construed it, satisfies the requirements of due process. Due process “require[s] only that, whatever

the relevant criteria, and whatever the evidence demanded, a State determine whether it wants to

treat a juvenile within the juvenile-court system before entering upon a proceeding that may result

in an adjudication that he has violated a criminal law and in a substantial deprivation of liberty,

rather than subject him to the expense, delay, strain, and embarrassment of two such proceedings.”

Int. of D.B., 616 S.W.3d 748, 757 (Mo. App. W.D. 2021) (quoting Kent, 383 U.S. at 562). The

hearing may be informal. Kent, 383 U.S. at 561. A juvenile court conducting a certification hearing

is not bound by the evidentiary requirements of a criminal trial or even the usual administrative

hearing. D.B., 616 S.W.3d at 756 (citing Kent, 383 U.S. at 562). The hearing must instead measure

up only to the essentials of due process and fair treatment. Id. “The process is constitutional if a

hearing is provided, the juvenile is given the right to counsel and access to his or her records, and

it results in a decision that sets forth the basis for the decision to relinquish jurisdiction in a way

 10
that is sufficient to permit meaningful appellate review.” State v. Nathan, 404 S.W.3d 253, 260

(Mo. banc 2013) (citing Kent, 383 U.S. at 557-62).

 Missouri’s juvenile certification process satisfies all of these requirements. Id. Where a

juvenile is charged with offenses which would constitute particular crimes under the general law,

including first degree robbery, the juvenile court must order a hearing to determine certification.

Section 211.071.1. The juvenile is entitled to a written notice of the hearing including a statement

of the purpose for the hearing and that the hearing will result in certification for prosecution under

the general law if the juvenile is found to not be a proper subject of the juvenile system. Section

211.071.4. The hearing must be on the record, the juvenile division must receive evidence “on

whether the juvenile is a proper subject to be dealt with under the juvenile code[,]” counsel may

examine the juvenile officer who prepared the report, and “[a]ll parties shall be afforded the

opportunity to testify, present evidence, cross-examine witnesses, and present arguments of law

and fact and arguments concerning the weight, credibility and effect of the evidence.” Rule

129.04b. If the court dismisses the petition to permit the child to be prosecuted under the general

law, the court must enter a dismissal order containing particularized findings supporting its

decision. Section 211.071.7.

 The focus in a certification proceeding is on the juvenile, not the conduct alleged in the

petition. Nathan, 404 S.W.3d at 259. Missouri Supreme Court Rule 116.02 provides “At all

hearings involving adjudication of the allegations of the petition or motion to modify, the rules of

evidence shall apply.” (emphasis added). By its terms, this rule only requires application of the

rules of evidence to hearings involving adjudication. The parties agree a certification hearing is

non-adjudicatory. See id. at 259-60; see also Breed, 421 U.S. at 535-37 (distinguishing juvenile

 11
transfer hearings and adjudicatory hearings). Therefore, the Missouri Supreme Court Rule does

not expressly require we apply the rules of evidence to juvenile certification hearings.

 Appellant argues our construction of Rule 116.02 violates the Missouri Constitution. We

disagree. Section 211.071 instructs us to consider all relevant evidence in a certification hearing.

Certification hearings are unique and the hearsay rules of evidence do not strictly apply. D.B., 616

S.W.3d at 757. As a result, construing Rule 116.02 to allow hearsay evidence in certification

hearings does not implement any rule which changes substantive rights or the law of evidence in

violation of article V, section 5 of the Missouri Constitution.

 Appellant also argues our construction of Rule 116.02 violates our duty under Rule 110.02

to construe court rules “to assure simplicity and uniformity in judicial procedure and fairness in

the administration of justice and to conduce to the welfare of the juvenile and the best interests of

the state.” Appellant does not explain why holding hearsay admissible in juvenile certification

hearings violates this instruction. The “fundamental due process right to fair treatment” does not

entitle the juvenile to the same protection afforded to adults in criminal prosecutions. Kent, 383

U.S. at 554-56. Courts have held the rights to bail, indictment by grand jury, speedy trial, trial by

jury, immunity against self-incrimination, or confrontation by accusers do not apply in juvenile

proceedings. Id. The minimal due process required in these hearings does not include an exclusion

of hearsay. Nathan, 404 S.W.3d at 260.

 Opinions by federal courts and those of other states inform our analysis. D.E.G., 601

S.W.3d at 229 (Fischer, J., dissenting) (“[E]very federal court that has addressed the issue has held

that the rules of evidence do not strictly apply in juvenile certification proceedings.”); see United

States v. SLW, 406 F.3d 991, 995 (8th Cir. 2005) (“[We] reject SLW's argument that the hearsay

rule applies at juvenile transfer proceedings.”); see also Wright, 456 N.W.2d at 664 (statute “which

 12
makes admissible all relevant and material evidence[] leaves no doubt but that the legislature

intended” admission of reliable hearsay including juvenile officer’s report).

 Appellant points to other types of hearings to argue by analogy hearsay should be excluded

from certification hearings. Appellant cites D.S.H. for its holding hearsay is inadmissible in

hearings terminating parental rights. D.S.H., 562 S.W.3d at 371. This case is distinguishable.

Unlike a termination of parental rights hearing, where a person’s rights related to their child may

be cut off, a certification hearing is non-adjudicatory. See Nathan, 404 S.W.3d at 259; see also In

re L.T., 989 S.W.2d 673, 676 (Mo. App. W.D. 1999) (holding termination of parental rights

proceedings involve adjudication). Termination of parental rights proceedings are further

distinguishable from juvenile certification hearings because Missouri courts and the U.S. Supreme

Court have found certification hearings occupy a unique status by virtue of the states’ need for

flexibility in dealing with juvenile offenders. D.B., 616 S.W.3d at 757 (citing Breed, 421 U.S. at

535).

 Appellant cites In re Carson for its holding hearsay is excludable in a probation revocation

hearing. In re Carson, 789 S.W.2d at 497. Probation revocation hearings are also distinguishable

from juvenile certification hearings. In a probation revocation hearing, a probationer is at risk of

losing liberty by commitment to the Department of Corrections. Id. at 496. In a certification

hearing, the accused is at risk of adjudication in the adult system, where the full force of due

process rights will attach at a criminal trial. See, e.g., State v. Miller, 372 S.W.3d 455, 466 (Mo.

banc 2012). In re Carson’s holding is further distinguishable because that case found the probation

violation report was impermissibly accepted into evidence without the testimony of, or the right to

cross-examine, the witnesses offering the report, including the probational officer who wrote the

report. In re Carson, 789 S.W.2d at 497. The report, despite being the State’s sole evidence the

 13
probationer had violated the terms of his probation, was not even signed and was so lacking in

indicia of reliability the court found it “could be merely the product of some home computer

printer.” In re Carson, 789 S.W.2d at 496. The court held hearsay evidence may form a basis to

revoke probation without offending minimal due process if the probationer or counsel may cross-

examine the witnesses offering hearsay evidence. In re Carson, 789 S.W.2d at 497 (citing Moore

v. Stamps, 507 S.W.2d 939 (Mo. App. E.D. 1974)). Here, the report was created in accordance

with statutory command and the deputy juvenile officer who prepared it testified and was available

for cross-examination.

 Appellant also argues hearsay should be excluded here because courts “generally” exclude

hearsay. We disagree. Unlike the strict procedures required in other situations, courts decline to

“prescribe criteria for, or the nature and quantum of evidence that must support, a decision to

transfer a juvenile for trial in adult court.” D.B., 616 S.W.3d at 757. To do so would limit the

flexibility states need to administer their juvenile systems. Id.

 Appellant argues, without citing law in support, traditional rules of evidence “should” be

followed to protect a juvenile’s right to due process and fairness in a certification hearing.

Appellant argues children should receive more protection than adults but does not provide a basis

in law to support heightened protections in a non-adjudicative proceeding. If a juvenile is certified

for prosecution under the general law, they will then be afforded their full panoply of constitutional

rights. Reiter v. Camp, 518 S.W.2d 82, 87 (Mo. App. W.D. 1974) We decline Appellant’s

invitation to expand full due process rights to certification hearings.

 Because section 211.071 instructs juvenile courts to review all relevant evidence and

neither Rule 116.02 nor minimal due process require the hearsay rules of evidence apply in juvenile

 14
proceedings, the juvenile court did not abuse its discretion in admitting and relying on hearsay

testimony in Appellant’s certification hearing.

 B. If Hearsay is Inadmissible, the Hearsay Evidence Was Merely Cumulative to Properly
 Admitted Evidence

 Even if Pugh’s testimony was hearsay, it was merely cumulative to other evidence

supporting certification. Cumulative evidence is additional evidence reiterating the same point.

Saint Louis Univ. v. Geary, 321 S.W.3d 282, 292 (Mo. banc 2009) (citing Burns v. Elk River

Ambulance, Inc., 55 S.W.3d 466, 483 (Mo. App. S.D. 2001)). Improperly admitted evidence

merely cumulative to evidence admitted without objection does not result in prejudice. Swartz v.

Gale Webb Transp. Co., 215 S.W.3d 127, 134 (Mo. banc 2007).

 Although Appellant’s trial counsel objected to the juvenile officer’s testimony, the State

correctly points out she said “[n]o objection” to admission of the juvenile officer’s report. Evidence

admitted without objection is treated as being properly admitted and the court may give it such

probative effect and value as it is entitled to. United States v. Carney, 468 F.2d 354, 357 (8th Cir.

1972) (citing Washington v. United States, 326 F.2d 585 (8th Cir. 1964)). When evidence is

admitted without objection, the party against whom it is offered waives any objection to the

evidence, and it may be properly considered even if the evidence would be excluded by a proper

objection. Sellenriek v. Dir. of Revenue, 826 S.W.2d 338, 339 (Mo. banc 1992) (citing Appelhans

v. Goldman, 349 S.W.2d 204, 207 (Mo. 1961)).

 The report contained information sufficient to support the juvenile court’s certification of

Appellant for prosecution under general law. The report described Appellant’s alleged felony

offenses; his prior criminal history and subsequent referrals while under the jurisdiction of the

juvenile court; his behavior at home, in custody, and in school; his educational history; his history

 15
of drug use; and his frequent absconding from his mother’s home while subject to juvenile court

supervision. The report also included assertions of Appellant’s threat to the community and the

juvenile officer’s opinion racial disparity played no role in their recommendation of prosecution

under general law. This information alone would support the juvenile court’s conclusion Appellant

is not the proper subject of the juvenile code.

 We review the admission of evidence for prejudice, not mere error. D.S.H., 562 S.W.3d at

369. Because the juvenile officer’s report was admitted without objection and contained sufficient

evidence to determine Appellant is not the proper subject of the juvenile system, any additional

hearsay evidence was merely cumulative to admitted evidence.

 The juvenile court did not abuse its discretion considering hearsay evidence in certifying

Appellant for prosecution under the general law.

 Point I is denied.

 Point II: Appellant Was Properly Certified for Prosecution Under General Law
 1. Standard of Review
 Appellate review of a juvenile court's decision to terminate jurisdiction over a youthful

offender is limited to determining whether in the totality of the circumstances the court abused its

discretion. Woodworth, 941 S.W.2d at 697 (citing A.D.R., 603 S.W.2d at 580-81).

 The trial court's decision will be sustained unless there is no substantial evidence to support

it, unless it is against the weight of the evidence, or erroneously declares or applies the law. In Int.

of J.M.C., 920 S.W.2d 173, 175 (Mo. App. W.D. 1996) (citing Murphy v. Carron, 536 S.W.2d 30,

32 (Mo. banc 1976)). This court views the facts in evidence and the reasonable inferences

therefrom in the light most favorable to the trial court's judgment when reviewing the sufficiency

 16
of the evidence. J.M.C., 920 S.W.2d at 175 (citing In Int. of R.A., 913 S.W.2d 142, 144 (Mo. App.

W.D. 1996)).

 2. Analysis

 In his second point, Appellant argues the juvenile court clearly erred and abused its

discretion in granting the Juvenile Office’s motion to dismiss its petition to allow Appellant to be

prosecuted under the general law.

 Section 211.071.6 sets forth the criteria the juvenile court shall consider in determining

whether to certify a juvenile for prosecution under the general law. The criteria listed in section

211.071.6 are not exclusive and the juvenile court need not give equal weight to each one. State v.

Thomas, 70 S.W.3d 496, 504 (Mo. App. E.D. 2002). These factors include: (1) The seriousness of

the offense alleged and whether the protection of the community requires transfer to the court of

general jurisdiction; (2) Whether the offense alleged involved viciousness, force and violence; (3)

Whether the offense alleged was against persons or property with greater weight being given to

the offense against persons, especially if personal injury resulted; (4) Whether the offense alleged

is a part of a repetitive pattern of offenses which indicates the child may be beyond rehabilitation

under the juvenile code; (5) The record and history of the child, including experience with the

juvenile justice system, other courts, supervision, commitments to juvenile institutions and other

placements; (6) The sophistication and maturity of the child as determined by consideration of his

or her home and environmental situation, emotional condition and pattern of living; (7) The age

of the child; (8) The program and facilities available to the juvenile court in considering

disposition; (9) Whether or not the child can benefit from the treatment or rehabilitative programs

available to the juvenile court; and (10) Racial disparity in certification. Section 211.071.6.

 1. Factors 1-3

 17
 The first three factors address the seriousness of the alleged offense; the need for

community protection; elements of viciousness, force, and violence; and whether the alleged

offense was against the person rather than property. Section 211.071.6(1)-(3).

 Appellant concedes the first three factors “weigh in favor of certification” for prosecution

under the general law. Appellant is charged with the serious crimes of robbery and resisting arrest,

constituting class A and Class D felonies under general law, respectively. Appellant stole a

woman’s vehicle at gunpoint, which is an offense against the person with a clear use of force and

violence. Appellant concedes the seriousness of the offense dominates our inquiry but urges the

analysis should not stop here. Thomas, 70 S.W.3d at 504 (“Notably, the serious nature of the crime

is the dominant criterion among the ten factors.”) (citing State v. Seidel, 764 S.W.2d 517, 519 (Mo.

App. S.D. 1989)).

 Appellant argues because no personal injuries resulted from the carjacking, the instruction

“especially if personal injury resulted” in factor three is not applicable. Appellant suggests his case

compares favorably to other cases in which certification was affirmed where personal injury or

death occurred or the juvenile had a more significant criminal history. See, e.g., State v. Simpson,

836 S.W.2d 75, 82-83 (Mo. App. S.D. 1992) (holding juvenile court did not abuse its discretion in

certifying juvenile charged with murdering mother). Appellant also provides statistics

demonstrating juvenile robberies rarely result in certification.

 The State contends statistics regarding other cases are not germane to our analysis, because

the juvenile court was only to consider whether Appellant’s charged crimes meet the standards of

seriousness and violence against the person.

 18
 We agree with the State. Appellant concedes his alleged crime constitutes a felony “against

a person involving force.” The third factor requires the juvenile court to consider “[w]hether the

offense alleged was against persons or property,” with “greater weight” attached to offenses

against persons, “especially if personal injury resulted.” Section 211.071.6(3). This factor does not

provide certification is proper only where personal injury resulted. Appellant does not contend his

carjacking a person at gunpoint was not an offense against the person.

 The juvenile court did not abuse its discretion in concluding Appellant’s offenses satisfied

the first three factors, notwithstanding the conclusions of other courts in distinct cases. Simpson,

836 S.W.2d at 82.

 2. Factors 4-5

 The fourth and fifth factors instruct the juvenile court to consider whether the juvenile’s

alleged offenses are part of a repetitive pattern suggesting he is beyond rehabilitation under the

juvenile code and to assess the juvenile’s record and history, “including experience with the

juvenile justice system” and other institutions. Section 211.071.6(4)-(5).

 Appellant argues the fourth factor weighs against certification because the alleged offense

is not part of a repetitive pattern of offenses indicating the juvenile may be beyond rehabilitation

under the juvenile code, because none of Appellant’s five prior referrals to the juvenile court

between September 18, 2016 and January 6, 2020 resulted in an adjudication. Appellant asks us to

find clear error in the juvenile court’s finding Appellant’s “history established a pattern of high-

risk delinquent behaviors involving the use of force, and violent and forceful behaviors despite

being under the jurisdiction of this court.” Appellant argues this finding was erroneous because

Appellant has never been afforded the services of the Division of Youth Services due to the lack

of prior adjudications.

 19
 The State contends even though the referrals were never adjudicated, they nevertheless

constitute a pattern of delinquent behavior suggesting Appellant is beyond the reach of the juvenile

system’s services. The State also highlights while Appellant was under the jurisdiction of the

juvenile court, he allegedly committed another similar violent crime.

 Appellant argues the juvenile court similarly erred in finding the fifth factor supported

certification, because referrals dismissed or otherwise not adjudicated do not establish a sufficient

“record and history of the child, including experience with the juvenile justice system, other courts,

supervision, commitments to juvenile institutions and other placements.” The juvenile court

therefore clearly erred in finding the community needed protection from Appellant “well into the

future.”

 The State contends Appellant’s frequent referrals, although not adjudicated, support the

juvenile court’s finding the community needs protection from Appellant’s criminal activity well

into the future.

 We agree with the State. Section 211.071 directs the juvenile court to assess all relevant

information. Prior referrals, even those which were dismissed, are proper subjects of the juvenile

court’s certification inquiry. Richardson v. State, 555 S.W.2d 83, 87 (Mo. App. W.D. 1977).

 3. Factor 6

 The sixth factor concerns “the sophistication and maturity of the child as determined by

consideration of his or her home and environmental situation, emotional condition and pattern of

living.” Section 211.071.6(6).

 Appellant argues this factor also weighed against certification, and the juvenile court

clearly erred in finding Appellant’s pattern of absconding from home while subject to court

 20
monitoring, drug use, poor behavior in school, and medical issues stemming from a shooting

incident demonstrated “a high level of sophistication [. . .] not normally seen in a 17 year old.”

Appellant argues this behavior demonstrates mere hallmarks of immaturity.

 The State contends the juvenile court was correct in finding Appellant has demonstrated

an unusually high sophistication for his age, posing a risk to the community. The State cites Seidel

to argue the juvenile court is entitled to deference in its finding of juvenile maturity. 764 S.W.2d

at 518 (deferring to the juvenile court’s finding of maturity because it had the opportunity to

observe the juvenile in person). We agree with the State.

 4. Factors 7-8

 The seventh and eighth factors instruct the juvenile court to consider the juvenile’s age and

the resources available to the juvenile system. Section 211.071.6(7)-(8).

 Appellant argues these factors weigh against certification and the juvenile court clearly

erred by finding Appellant’s age neither precluded nor required certification and the juvenile

system could not properly rehabilitate Appellant in the time available to it.5 Appellant cites a recent

change in law supporting the contention the juvenile system could retain jurisdiction until nineteen.

Section 211.181.4. Therefore, Appellant argues, the juvenile court clearly erred in finding

Appellant could not be rehabilitated.

 The State argues the juvenile court did not abuse its discretion in finding there would be

insufficient time for the juvenile system to rehabilitate him. The State cites State v. Tate to argue

it was reasonable for a juvenile court to find two years an insufficient amount of time to rehabilitate

5
 The juvenile court found it could only retain jurisdiction until age eighteen.

 21
a particular juvenile. 637 S.W.2d 67, 72 (Mo. App. E.D. 1982), overruled on other grounds by

State v. Carson, 941 S.W.2d 518 (Mo. banc 1997).

 We defer to the juvenile court’s findings regarding the time needed to rehabilitate a

juvenile. State v. Kemper, 535 S.W.2d 241, 251 (Mo. App. W.D. 1975). A juvenile court may

properly find, in its discretion, a period of even five years may not be enough to rehabilitate a

juvenile. Id. Each juvenile is unique, and resources which may benefit one are not necessarily

helpful to another. A.D.R., 603 S.W.2d at 580 (citing State ex rel. Boyd v. Rutledge, 13 S.W.2d

1061, 1066 (Mo. banc 1929).

 5. Factor 9

 The ninth factor requires determination of whether the juvenile can benefit from the

treatment or rehabilitative programs available to the juvenile court. Section 211.071.6(9).

 The juvenile court found this factor favored certification because there were insufficient

resources available to rehabilitate Appellant.

 Appellant does not address this factor, so we do not discuss it further.

 The State cites the juvenile officer’s testimony there were no facilities or resources

available to the Missouri Department of Youth Services to adequately address Appellant’s needs.6

 We consider “societal needs and the likely unrewarding ameliorative effect of

the juvenile justice system” in considering whether application of the general law is required.

A.D.R., 603 S.W.2d at 580.

6
 The juvenile officer’s opinion the Appellant is “not amenable” to the juvenile system’s services is also contained in
the juvenile officer’s report, which was admitted without objection.

 22
 6. Factor 10

 The tenth factor requires the juvenile court to consider racial disparity in certification. The

juvenile court found race was not a consideration in Appellant’s certification.

 Appellant argues the juvenile court’s finding racial disparity played no role in certification

is unsatisfactory, given studies demonstrating black youths are disproportionately certified for

prosecution under the general law. Appellant cites no evidence race was considered in Appellant’s

hearing. The juvenile officer’s report provided racial disparity bore “no significance” on the

juvenile officer’s recommendation, and he testified the juvenile’s race did not play a role in the

recommendation. In conducting our review, we bear in mind the juvenile court was in a superior

position to judge the credibility of witnesses and it was free to believe all, part, or none of the

witnesses' testimony. In re S.L.J., 3 S.W.3d 902, 907 (Mo. App. S.D. 1999) (citing Matter of M.M.,

973 S.W.2d 165, 168 (Mo. App. S.D. 1998).

 Appellate review of a juvenile court's decision to terminate jurisdiction over a youthful

offender is limited to a determination of whether in the totality of the circumstances the court

abused its discretion. Woodworth, 941 S.W.2d at 697 (citing A.D.R., 603 S.W.2d at 580-81). The

juvenile court found all ten factors favor certification.

 Appellant concedes the first three factors favor certification. The first factor, the

seriousness of the alleged offense is a "dominant criterion among the ten factors." Thomas, 70

S.W.3d at 504. The first three factors contain some of the most critical considerations in

certification. Seidel, 764 S.W.2d at 519 (citing State v. Mouser, 714 S.W.2d 851, 857 (Mo. App.

W.D. 1986), overruled on other grounds by Carson, 941 S.W.2d 518). Appellant has not shown

 23
the juvenile court abused its discretion as to any of the remaining factors or the totality of the

circumstances considering all ten factors.

 The juvenile court did not abuse its discretion in finding the above factors favored

certification. Point II is denied.

 Conclusion

 For the reasons stated above, we affirm.

 _______________________________
 Philip M. Hess, Presiding Judge

Angela T. Quigless, Judge and
Colleen Dolan, Judge concur.

 24