

# In the Missouri Court of Appeals
# Eastern District
## DIVISION ONE

| | | |
|---|---|---|
| IN THE INTEREST OF: D.M.M. | ) | No. ED110157 |
| | ) | |
| | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| | ) | Case No: 21AD-JU00200 |
| | ) | |
| | ) | |
| | ) | Honorable Rebeca Navarro-McKelvey |
| | ) | |
| | ) | |
| | ) | FILED:  December 13, 2022 |

### Introduction

D.M.M. (Juvenile) appeals from the Order for Certification (Judgment) granting the Juvenile Office's motion to dismiss Juvenile's petition and transfer Juvenile's case from the juvenile court to a court of general jurisdiction. We affirm.

### Factual and Procedural Background

Juvenile was born on January 13, 2004, and was 17 years, 10 months old when he was certified for prosecution as an adult for crimes committed when he was 17 years, 7 months old.

On August 7, 2021, Juvenile Officer (JO) filed a petition alleging that Juvenile committed the delinquency offenses of robbery, second degree; tampering, second degree; stealing, felony; stealing, misdemeanor; and behavior injurious to his welfare or the welfare of another by possessing a firearm while committing the above-described delinquency offenses in St. Charles County on August 6, 2021.

On September 7, 2021, the JO filed a motion pursuant to Section 211.071 RSMo 2000[1] and Rule 129 requesting a hearing to determine whether the petition filed in the underlying cause should be dismissed to allow Juvenile to be prosecuted under the general law of Missouri for the commission of a felony. The juvenile court granted the motion and the certification hearing was conducted on November 8, 2021 and November 12, 2021.

Prior to the certification hearing, Juvenile filed prospective objections. Juvenile sought, *inter alia*, to prevent Deputy Juvenile Officer Anthony Mikus (DJO Mikus) from offering expert opinion testimony. In response, the JO stated that Section 211.071, Rule 129.03, and Rule 129.04 require a prehearing report, and that DJO Mikus was therefore permitted to give opinion testimony under the applicable law. Juvenile made a continuing objection at the beginning of the hearing to DJO Mikus's opinion testimony and corresponding report.

During the hearing, DJO Mikus testified that at the time he was assigned to review Juvenile's case in St. Charles County, he had 33 years' experience as a deputy juvenile officer and had been assigned to approximately 10 certification cases. DJO Mikus testified he interviewed Juvenile and his mother, and he reviewed Juvenile's records from school as well as the Division of Youth Services (DYS). DJO Mikus testified he reviewed "various police reports" and prepared a certification report. When the JO moved to admit DJO Mikus's report, Juvenile objected to DJO Mikus's opinions in the report because DJO Mikus's opinions invaded the province of the fact-finder and were otherwise inadmissible under Section 490.065. Juvenile further objected that DJO Mikus had not been qualified as an expert, and that DJO Mikus's opinions were not based on any reliable methodology. The JO argued that Section 490.065 did

---

[1] Unless otherwise indicated, all further statutory references are to RSMo 2000 as amended.

not apply in certification hearings. The hearing court overruled Juvenile's objections and admitted DJO Mikus's certification report.

DJO Mikus then testified as to the contents of police reports containing the allegations against Juvenile. Juvenile objected, arguing that DJO Mikus's testimony was hearsay-within-hearsay not contemplated by Section 490.065, and that Juvenile was unable to cross-examine any declarant to the facts recited by DJO Mikus. The hearing court overruled Juvenile's objection. DJO Mikus was asked whether "the seriousness of the alleged offenses and community protection" required Juvenile to be certified to be prosecuted as an adult. Juvenile objected, arguing the JO's question called for improper opinion testimony under Section 490.065. The court overruled Juvenile's objection and granted Juvenile a continuing objection on that basis.

In recommending certification, DJO Mikus opined that because the offenses alleged in the petition occurred after Juvenile already had a history in the system and in DYS, and because a handgun was alleged to be involved in the offenses, the safety of the community required Juvenile to be certified. Moreover, DJO Mikus believed the alleged offenses involved violence because of the presence of a handgun, were against persons and property, and showed an escalating pattern of offenses. DJO Mikus believed Juvenile's maturity was average, but Juvenile was "a little bit more sophisticated in that he's experienced a lot of trauma." DJO Mikus opined that because Juvenile had already been committed and completed residential and aftercare, he did not believe another commitment to DYS would be effective. DJO Mikus further opined that he did not believe DYS had available programs, facilities, or resources to allow proper rehabilitation of Juvenile. DJO Mikus stated he did not believe race had an effect on his recommendation. When asked what his recommendation was regarding certification of Juvenile, DJO Mikus unequivocally responded that "this matter should be dismissed and transferred to the

3

court of general jurisdiction." DJO Mikus testified that, as required by the statute for certification, he conducted an investigation into whether Juvenile should be certified as an adult by reading police reports, reviewing Juvenile's juvenile records, reading documents from Case.net, reading reports from psychological evaluations of Juvenile, and interviewing Juvenile and his mother.

On November 22, 2021, the juvenile court entered its Judgment granting the Juvenile Office's motion to dismiss and transferring the matter to a court of general jurisdiction. The juvenile court found certification was appropriate because Juvenile's felony robbery, tampering with a motor vehicle, and stealing charges, as well as related misdemeanor charges, demonstrated a need to protect the community. The court found Juvenile's charges "involved viciousness, force, and violence and involved the possession of a weapon" and were "offenses against both persons and property." The court found the alleged offenses were "part of a repetitive pattern," as Juvenile had been previously adjudicated on tampering offenses. The court further found that because of the "volume and serious nature of the referrals" there was a strong indication that Juvenile was "beyond rehabilitation under the juvenile code." The court noted that since age 12, Juvenile had committed a total of 13 delinquency related offenses and had received numerous rehabilitative services through the juvenile justice system. However, despite receiving said services, the court found Juvenile failed to derive any benefit from them.

Juvenile was 17 years, 10 months old at the time of the certification hearing in November 2021. The court reasoned that Juvenile required treatment in a setting unavailable in the juvenile system, and that rehabilitation in the juvenile system would be unavailing given the seriousness of the offenses and the age as well as emotional sophistication and physical maturity of Juvenile.

The court concluded that based on Juvenile's record, "it is apparent that there are no reasonable prospects for rehabilitation within the juvenile system." This appeal follows.[2]

## Standard of Review

Our review of a juvenile court's decision to terminate jurisdiction over a juvenile offender is limited to a determination of whether in the totality of the circumstances the juvenile court abused its discretion. State v. Woodworth, 941 S.W.2d 679, 697 (Mo. App. W.D. 1997) (citing Int. of A.D.R., 603 S.W.2d 575, 580-81 (Mo. banc 1980)). An abuse of discretion exists where the juvenile court's ruling is so unreasonable and arbitrary that it shocks the sense of justice and is clearly against the logic of the surrounding circumstances. Int. of T.D.S., 643 S.W.3d 510, 516 (Mo. App. E.D. 2021). We defer to the juvenile court on issues of credibility. Woodworth, 941 S.W.2d at 692.

A decision by the court in juvenile matters is subject to the same standard of review applicable to court-tried civil cases. The trial court's decision will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or erroneously declares or applies the law. Int. of J.M.C., 920 S.W.2d 173, 175 (Mo. App. W.D. 1996) (citing Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976)). We view the facts in evidence and the reasonable inferences therefrom in the light most favorable to the trial court's judgment when reviewing the sufficiency of the evidence. J.M.C., 920 S.W.2d at 175 (citing Int. of R.A., 913 S.W.2d 142, 144 (Mo. App. W.D. 1996)).

Finally, we give "substantial deference . . . to the trial court's determinations regarding the admissibility of evidence, which will not be disturbed absent an abuse of discretion." Int. of

---

[2] Additional facts relevant to Juvenile's points on appeal will be set forth, as needed, in the discussion section below.

D.S.H. v. Greene Cnty. Juv. Officer, 562 S.W.3d 366, 369 (Mo. App. S.D. 2018) (quoting

Dodson v. Ferrara, 491 S.W.3d 542, 552 (Mo. banc 2016)).  We review the admission of

evidence for prejudice, not mere error.  Id.  (citing White v. R.L. Persons Constr., Inc., 503

S.W.3d 339, 345 (Mo. App. S.D. 2016)).

Discussion

Juvenile raises two interrelated points on appeal.  In Point I, Juvenile argues the court

abused its discretion in overruling his objections to DJO Mikus giving "expert opinion

testimony," because that testimony did not meet the requirements for admission under Section

490.065.  Juvenile contends that Section 490.065 should be construed in harmony with Section

211.071 and, further, that the admission of DJO Mikus's opinion testimony was prejudicial.  In

Point II, Juvenile argues the court abused its discretion in overruling his objections to the

admission of the opinion testimony given by DJO Mikus contained in Exhibit 1, the certification

report, because the report did not meet the requirements for admission under Section 490.065

and, further, DJO Mikus's opinions contained in Exhibit 1 were prejudicial.  We disagree.

Section 211.071 sets out the process for certification of a juvenile for trial as an adult.

When a certification hearing is required by Section 211.071.1, "[a] written report shall be

prepared . . . developing fully all available information relevant to the criteria which shall be

considered by the court in determining whether the child is a proper subject to be dealt with

under the provisions of [Chapter 211] and whether there are reasonable prospects of

rehabilitation within the juvenile justice system."  J.N.W. v. Juvenile Officer, 643 S.W.3d 618,

631 (Mo. App. W.D. 2022) (quoting Section 211.071.6).  "[T]he court must consider the juvenile

officer's report which must contain all available information relevant to the court's consideration

in making a certification determination."  T.D.S., 643 S.W.3d at 519.  "The report should

therefore be comprehensive, and the juvenile court should consider the report in its entirety.  The

6

juvenile officer's testimony, in addition to the report itself, is relevant evidence for the juvenile court's consideration." Id.

Additionally, Section 211.071.6 provides a non-exhaustive list of ten factors to be included in the certification report. J.N.W., 643 S.W.3d at 631-32. These factors include the characteristics of the juvenile's offense; the juvenile's history, behavior, age, and sophistication; the program and facilities available to the juvenile court; whether the juvenile could benefit from the programs available to the juvenile court; and racial disparity. Id. In assessing the factors in Section 211.071, the juvenile court is entitled to significant discretion in reaching its certification determination. T.D.S., 643 S.W.3d at 519. It is not required to give equal weight to, nor to make express findings on, each one of the non-exclusive statutory factors. J.N.W., 643 S.W.3d at 632. It "is only required by section 211.071.7(4) to make '[f]indings showing the reasons underlying the court's decision to transfer jurisdiction' in a manner 'that is sufficient to permit meaningful appellate review.'" Id. (internal quotation omitted).

With respect to Point I, "Chapter 211 . . . governs all proceedings brought in juvenile court" including certification hearings. In re K.S.W., 454 S.W.3d 422, 426 (Mo. App. W.D. 2015). Juvenile certification hearings are not adjudications, and the hearings may be informal. T.D.S., 643 S.W.3d at 519. Because juvenile certification hearings are not adjudicatory, they are not bound by the evidentiary requirements of a criminal trial or even the usual administrative hearing. Id. at 520; Int. of D.B., 616 S.W.3d 748, 756 (Mo. App. W.D. 2021). The hearing must instead measure up only to the essentials of due process and fair treatment. Id. "The process is constitutional if a hearing is provided, the juvenile is given the right to counsel and access to his or her records, and it results in a decision that sets forth the basis for the decision to relinquish jurisdiction in a way that is sufficient to permit meaningful appellate review." State v. Nathan,

404 S.W.3d 253, 260 (Mo. banc 2013).  Missouri's juvenile certification process satisfies all of these requirements.  Id.

Regarding Section 490.065.1, the statute provides that it shall apply "in actions *adjudicated* in juvenile courts under chapter 211." (emphasis added). The statute expressly mentions that it shall apply to those actions "adjudicated in juvenile courts under Chapter 211" and does not include any other types of proceedings under said chapter, thus justifying the exclusion of other proceedings under Chapter 211 that are not adjudications. Therefore, because the certification hearings under Section 211.071 were not included among the actions under Chapter 211 to which Section 490.065 would apply, the exclusion of the application of Section 490.065 to the reports and corresponding testimony required for certification hearings under Section 211.071 is justified under the plain language of the statute.

Moreover, Section 211.071, read in concert with Rules 192.03 and 192.04, mandates that the certification report and corresponding testimony be considered together. Section 211.071 provides the report "shall be prepared," "shall include" the criteria contained within Section 211.071.6 (1)- (10), [3] and "shall be considered by the Court."  Nothing in the express language of

_____

[3] Section 211.071 provides:
>  6. A written report shall be prepared in accordance with this chapter developing fully all available information relevant to the criteria which shall be considered by the court in determining whether the child is a proper subject to be dealt with under the provisions of this chapter and whether there are reasonable prospects of rehabilitation within the juvenile justice system. These criteria shall include but not be limited to:
>  (1) The seriousness of the offense alleged and whether the protection of the community requires transfer to the court of general jurisdiction;
>  (2) Whether the offense alleged involved viciousness, force and violence;
>  (3) Whether the offense alleged was against persons or property with greater weight being given to the offense against persons, especially if personal injury resulted;
>  (4) Whether the offense alleged is a part of a repetitive pattern of offenses which indicates that the child may be beyond rehabilitation under the juvenile code;
>  (5) The record and history of the child, including experience with the juvenile justice system, other courts, supervision, commitments to juvenile institutions and other placements;

Section 211.071 places restrictions on the report such as those contemplated by Juvenile. While it is true there is no Missouri caselaw specifically addressing the application of Section 490.065 to the report requirements under Section 211.071.6, we find the reasoning in Int. of T.D.S. instructive. There, the court considered the admissibility of hearsay evidence in a juvenile certification hearing and interpreted the statutory language of Section 211.071 as follows:

> In statutory construction, we give meaning to every word, clause, sentence and section of a statute and do not interpret a statute in a way that would render some phrases "mere surplusage." State v. Acevedo, 339 S.W.3d 612, 617 (Mo. App. S.D. 2011) (quoting State v. Graham, 149 14 S.W.3d 465, 467 (Mo. App. E.D. 2004)). We interpret the second use of "shall" and its surrounding language in section 211.071.6 to mean the court must consider the juvenile officer's report which must contain all available information relevant to the court's consideration in making a certification determination. Coney v. State, 491 S.W.2d 501, 511 (Mo. 1973) ("[Section 211.071, RSMo 1954] vests in the juvenile judge a discretion, after receiving the investigation report and hearing evidence, to determine whether the juvenile before him is a proper subject to be dealt with under the juvenile code[.]"). The report should therefore be comprehensive and the juvenile court should consider the report in its entirety. The juvenile officer's testimony, in addition to the report itself, is relevant evidence for the juvenile court's consideration. State v. Whitfield, 947 S.W.2d 537, 539 (Mo. App. E.D. 1997) (affirming juvenile court's certification based on juvenile officer's hearsay testimony received without objection).
>
> We conclude this without adding language to section 211.071. The State asks us to interpret section 211.071, given section 211.068's allowance of hearsay in testimony by prosecutors regarding prosecution under the general law, because "the Juvenile Code is a complete law, and each section is to be read and construed in relation to the others." State v. Williams, 473 S.W.2d 382, 383 (Mo. 1971). This direction does not require us, as the State suggests, to add language to section 211.071 by reference to other sections. Although we are instructed to construe the Juvenile Code liberally, "such liberal construction cannot be utilized to give the juvenile court jurisdiction and powers not conferred upon it by statute." B. L. W. by Ellen K. v. Wollweber, 823 S.W.2d 119, 121 (Mo. App. S.D. 1992) (citing In Int. of M.K.R., 515 S.W.2d 467, 470 (Mo. banc 1974)). The

---

(6) The sophistication and maturity of the child as determined by consideration of his or her home and environmental situation, emotional condition and pattern of living;
(7) The age of the child;
(8) The program and facilities available to the juvenile court in considering disposition;
(9) Whether or not the child can benefit from the treatment or rehabilitative programs available to the juvenile court; and
(10) Racial disparity in certification.

> primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning. State v. Kraus, 530 S.W.2d 684, 685 (Mo. banc 1975) (citing State ex rel. Dravo Corp. v. Spradling, 515 S.W.2d 512 (Mo. 1974)). Section 211.071 requires a written report containing "all available information" relevant to the criteria the court shall consider in a certification hearing. Such a report will, by necessity, contain hearsay. The plain meaning of the instruction in section 211.071 allows the court to consider hearsay evidence. See State v. Wright, 456 N.W.2d 661, 664 (Iowa 1990).

T.D.S., 643 S.W.3d at 518-19. The court went on to conclude that because certification hearings are non-adjudicatory and unique, "the hearsay rules of evidence do not strictly apply." T.D.S., 643 S.W.3d at 520. The court noted that Section 211.071, which makes admissible all relevant and material evidence, leaves no doubt the legislature intended admission of reliable hearsay, including the juvenile officer's report, as inherent in this type of proceeding. Id. Extending by analogy the reasoning in T.D.S. to the instant case, we find both the report required by Section 211.071 and testimony by DJO Mikus, who prepared the report, were properly admitted, including those components that will "invariably" include hearsay.

Section 211.071.6 states the criteria to be included in the report "shall include but not be limited to" the following: "whether the protection of the community requires transfer to the court of general jurisdiction" (Section 211.071.6 (1)) and "the sophistication and maturity of the child as determined by consideration of his or her home and environmental situation, emotional condition, and pattern of living." (Section 211.071.6 (6)). To the extent that Juvenile argues such information necessarily incorporates the opinion of DJO Mikus, then the report required under the plain language of Section 211.071.6 will, by necessity, contain such an opinion, and therefore, the plain meaning in Section 211.071, as argued above, allows the court to consider evidence such as that provided by DJO Mikus.

10

Here, the court was provided with a written report pursuant to Section 211.071.6, which is the section discussing criteria that must be considered by the court to determine whether the child is a proper subject to be dealt with under the provisions of the juvenile code. Concerning the Judgment itself, Section 211.071.7[4] requires that "[i]f the court dismisses the petition to permit the child to be prosecuted under the general law, the court must enter a dismissal containing particularized findings supporting its decision." T.D.S., 643 S.W.3d at 520. The juvenile court made findings on each factor and based its findings and conclusions not only on the testimony and report of DJO Mikus but also on the testimony of teachers, counselors, and therapists as well as the extensive history and record of Juvenile. In its Judgment, the juvenile court noted the factors discussed in Section 211.071.6—factors that were also argued during the certification hearing. Notably, the allegations of second-degree robbery and tampering with a motor vehicle weighed on several factors the court considered. Additionally, the court noted the repetitive pattern of offenses as well as Juvenile's prior contacts with the juvenile justice system as a result of his multiple delinquency-related offenses beginning at age 12. Clearly, the juvenile court carefully considered all the factors listed in Section 211.071.6, and considered not just the alleged crimes, but specifically Juvenile as an individual, and his past, present, and future. ("Each juvenile is unique, and resources which may benefit one are not necessarily helpful to another." T.D.S., 643 S.W.3d at 526).

---

[4] Section 211.071 provides:
> 7. If the court dismisses the petition to permit the child to be prosecuted under the general law, the court shall enter a dismissal order containing:
> (1) Findings showing that the court had jurisdiction of the cause and of the parties;
> (2) Findings showing that the child was represented by counsel;
> (3) Findings showing that the hearing was held in the presence of the child and his or her counsel; and
> (4) Findings showing the reasons underlying the court's decision to transfer jurisdiction.

Lastly, as argued above, Juvenile was not deprived of the protections afforded by the certification procedure in Section 211.071 or Rule 129. Juvenile received notice that a certification hearing would be held based on the motion to dismiss. Section 211.071.4; Rule 129.02. Juvenile was represented by counsel. Section 211.071.7(2); Rule 129.04a. The hearing was held in the presence of Juvenile and Juvenile's counsel. Section 211.071.7(3). The court received testimony, in a hearing on the record, about whether Juvenile was a proper subject to be dealt with under the juvenile code. Rule 129.04b. His counsel cross-examined DJO Mikus during his testimony. Id. Juvenile was permitted to offer evidence and his counsel argued on his behalf against certification. Id.

Finally, with respect to Point II, assuming without deciding that the challenged parts of DJO Mikus's testimony and the certification report were improperly admitted, the record clearly shows that Juvenile suffered no prejudice as a result of such admission. The record shows there was substantial evidence to support certification for prosecution under general law. The juvenile court carefully considered all the information contained in the certification report, which was prepared according to the enumerated criteria under Section 211.071.6. Additionally, contrary to Juvenile's contentions, the court relied on and examined all the factors under Section 211.071.6 and based its findings on extensive evidence and the "totality of the circumstances," not only on DJO Mikus's testimony and report. Appellate review of a juvenile court's decision to terminate jurisdiction over a juvenile offender is limited to determining whether in the totality of the circumstances the court abused its discretion. T.D.S, 643 S.W.3d at 523; Woodworth, 941 S.W.2d at 697. Accordingly, there is substantial support for the juvenile court's conclusion that terminating jurisdiction over Juvenile was proper.

Based on the foregoing, the juvenile court did not abuse its discretion in admitting the certification report and testimony of DJO Mikus into evidence during the certification hearing. Additionally, Juvenile suffered no prejudice as a result of such admission because the record supported the finding of certification. Points I and II are denied.

Conclusion

The Judgment is affirmed.

_Sherri B. Sullivan_

SHERRI B. SULLIVAN, J.

Angela T. Quigless, P.J., and
Robert M. Clayton III, J., concur.