

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | |
|---|---|
| IN THE INTEREST OF: E.T.S. | ) |
| | ) |
| JUVENILE OFFICER, | ) |
| | ) |
| Respondent, | ) **WD85088** |
| | ) |
| v. | ) **OPINION FILED:** |
| | ) **January 10, 2023** |
| | ) |
| E.T.S., | ) |
| | ) |
| Appellant. | ) |

**Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Jalilah Otto, Judge**

**Before Division Three:** Karen King Mitchell, Presiding Judge, and
Cynthia L. Martin and Anthony Rex Gabbert, Judges

E.T.S. appeals, following a hearing and judgment dismissing the juvenile court petition against him and certifying him to be prosecuted as an adult for the alleged crimes of murder in the second degree (two counts), armed criminal action (two counts), and a municipal ordinance violation for carrying a concealed weapon. E.T.S. raises one point on appeal: that the juvenile court erred in allowing opinion testimony by a deputy juvenile officer (DJO) in that § 490.065[1] applies to juvenile certification hearings conducted pursuant to § 211.071, the DJO did not meet

---

[1] All statutory references are to the Revised Statutes of Missouri, Supp. 2021.

the qualifications of an expert pursuant to § 490.065 and, as a result, E.T.S. was denied his constitutional right to due process. Finding no merit in this argument, we affirm.

## Background[2]

On September 30, 2021, the juvenile officer (JO) filed a petition in the family court division of the Circuit Court of Jackson County, Missouri (juvenile court),[3] alleging that E.T.S. committed two counts of murder in the second degree, two counts of armed criminal action, and one count of a municipal ordinance violation for carrying a concealed weapon. E.T.S. was seventeen years old at the time the petition was filed. The alleged ordinance violation occurred the day before the petition was filed, and the other alleged offenses occurred when E.T.S. was sixteen years old. On October 1, 2021, the JO filed a motion requesting a hearing pursuant to § 211.071 to dismiss the petition and certify E.T.S. to be prosecuted as an adult.

On December 10, 2021, E.T.S. filed his Motion to Exclude Improper Opinion Testimony, arguing that the DJO, Sandy Rollo-Hawkins, could not testify as an expert because her testimony did not comply with the requirements of § 490.065 and the admission of her testimony would violate the statute and the Fourteenth Amendment to the U.S. Constitution. In response to E.T.S.'s motion, the JO argued that § 490.065 does not apply to juvenile certification hearings. On December 14, 2021, E.T.S. filed the psychological evaluation report of Jason Lawrence, Ph.D., and on December 14 and 15, respectively, Rollo-Hawkins filed the Certification Report and Amended Certification Report, of which pages 1-6 contained a summary of the police report on the charged offenses and pages 7-18 addressed the factors required by § 211.071.6.

---

[2] The appellate court does "not weigh the evidence or determine the reliability or credibility of the witnesses" in an appeal of a § 211.071 judgment of certification. *State v. Thomas*, 70 S.W.3d 496, 504 (Mo. App. E.D. 2002).

[3] We use the term "juvenile court," even though the juvenile division is not a separate court but is instead a division of the circuit court (here, the Family Court Division of the Circuit Court of Jackson County), because the term "juvenile court" is defined in § 211.021(3) to include divisions of the circuit court of the county "while hearing juvenile cases assigned to them."

2

On December 20, 2021, the certification hearing was held. The JO presented as witnesses Detective Timothy Taylor, who investigated the alleged crimes with which E.T.S. is charged, and DJO Rollo-Hawkins. The court acknowledged that Rollo-Hawkins had filed the Certification Report required by § 211.071. The court denied E.T.S.'s motion to exclude the totality of Rollo-Hawkins's testimony but invited E.T.S.'s counsel to object if Rollo-Hawkins was asked a question "that does in fact get into opinion testimony beyond what is required by the statutory report."

Rollo-Hawkins's testimony included the following statements of fact:

1. She has been a DJO for thirteen years, with yearly trainings, doing risk assessments with juveniles referred to the court with delinquencies.

2. She authored the certification report based on information obtained from police reports, court documents, school records, an interview with E.T.S. and his lawyer, and an interview with E.T.S. and his mother regarding home life, interpersonal skills, school records, and his activities and interactions in the community.[4]

3. E.T.S. and his mother told Rollo-Hawkins that E.T.S. did not have behavioral problems at home, although he had had some problems at school including in-school and out-of-school suspensions, he struggled with remote learning during the COVID pandemic, and he had dropped out of school in the ninth grade in order to work.

4. E.T.S. did not have a history of mental health problems, but Rollo-Hawkins had not evaluated his history of traumatic experiences.

Counsel for E.T.S. objected to questions asked of Rollo-Hawkins about E.T.S.'s maturity and the possibility for rehabilitation with Division of Youth Services (DYS) programs on grounds the questions elicited improper expert opinions. The juvenile court overruled those objections and, at the court's suggestion, Rollo-Hawkins was asked to testify based on her experience as a DJO and her examination of witnesses and documents, to which she gave the following opinions:

---

[4] Rollo-Hawkins also testified about a mistake in the Amended Certification Report, in that it stated that E.T.S. had a criminal record, but she confirmed that E.T.S. had no criminal record and had not been before the juvenile court or any other court before being charged with the crimes alleged here.

3

1. E.T.S. presented with "age-appropriate intelligence, maturity, and sophistication," a conclusion she based on her experience and her questions about his home life.[5]

2. E.T.S.'s needs could not be met through probation or commitment to DYS based, in part, on the likelihood that E.T.S. would be discharged from DYS after a little over a year, although there was a possibility that he would stay in DYS until he was 19.

Rollo-Hawkins stated that her opinions, both in her testimony and in the Amended Certification Report, were most heavily affected by the seriousness of the charges against E.T.S.[6] The JO offered the Amended Certification Report into evidence, and E.T.S.'s counsel objected on grounds that it contained improper expert opinion. The court took judicial notice of the case file, including the Amended Certification Report, noting that it would disregard any portions that "the Court needs to disregard by law."

E.T.S.'s counsel cross-examined Rollo-Hawkins, questioning her about her education and lack of authority to prescribe medication, and confirming that she had not examined E.T.S. about past trauma. E.T.S.'s counsel also asked questions of her regarding the police report's account of facts about the underlying offenses charged, which the court allowed for the purpose of mitigating evidence regarding the seriousness of the charged offenses.

Dr. Lawrence, a psychologist, testified on behalf of E.T.S. Dr. Lawrence presented his opinion that E.T.S. would benefit from DYS programs and would become a lower risk to the community as he aged. Dr. Lawrence's psychological evaluation report was admitted into evidence, and he testified about a traumatic event in E.T.S.'s past involving a drive-by shooting in which a friend was killed.

---

[5] In his closing argument, counsel for E.T.S. stated, "[B]oth sides here agreed that [E.T.S.] is of average sophistication and maturity for 17-year-olds."

[6] The first of the criteria required to be in the Certification Report pursuant to § 211.071.6(1) is "seriousness of the offense alleged."

4

On December 23, 2021, the juvenile court dismissed the petition and certified E.T.S. for prosecution as an adult, including in its judgment of dismissal a consideration of all factors listed in § 211.071, referring to credible testimony of the witnesses and the Amended Certification Report, noting the seriousness of the charges, and finding that commitment to DYS would be inappropriate due to the limitations of its programs and the limited amount of time E.T.S. would be treated at juvenile facilities.

**Analysis**

E.T.S. raises one claim on appeal: that the juvenile court abused its discretion in receiving opinion testimony from the DJO during the § 211.071 certification hearing. We will not reverse a lower court's admission of evidence unless there is an abuse of discretion. *In re T.D.S.*, 643 S.W.3d 510, 516 (Mo. App. E.D. 2021). The juvenile court's decision to admit evidence in a certification hearing is given "[s]ubstantial deference." *Id.* (quoting *In re D.S.H. v. Greene Cnty. Juv. Officer*, 562 S.W.3d 366, 369 (Mo. App. S.D. 2018)). Section 211.071 also grants the juvenile court broad discretion in its decision to "dismiss the petition and transfer the child to a court of general jurisdiction for prosecution under the general law." The juvenile court abuses its discretion in certifying a child only if its decision "is so unreasonable and arbitrary that it shocks the sense of justice and is clearly against the logic of the surrounding circumstances." *Id.* (quoting *Alberswerth v. Alberswerth*, 184 S.W.3d 81, 100 (Mo. App. W.D. 2006)).

E.T.S.'s sole point on appeal is that the juvenile court should have found that § 490.065 applied to the DJO's testimony and that, as a result, the DJO should not have been allowed to testify to an opinion about E.T.S.'s maturity or the possibility for rehabilitation in the juvenile system, allowing the testimony violated E.T.S.'s constitutional right to due process, and E.T.S. was prejudiced because without the DJO's testimony there was insufficient evidence to support

5

the certification of E.T.S. for prosecution as an adult. We disagree. Because § 490.065 does not apply to juvenile certification hearings, the juvenile court did not abuse its discretion in allowing the DJO to testify, and E.T.S. was not prejudiced by the admission of the testimony because even without the DJO's challenged testimony there was sufficient evidence to support the certification of E.T.S. for prosecution as an adult.

**I.      The juvenile court did not abuse its discretion or deny E.T.S.'s right to due process in admitting the DJO's testimony.**

Here, the juvenile court complied with all relevant requirements of § 211.071, which mandates the process the juvenile court must follow before ruling on a certification petition. For any petition seeking certification, like this one, which alleges "second degree murder under [§] 565.021," § 211.071.1 provides that "the court shall order a hearing." Under § 211.071.6, a "written report shall be prepared" and that report "shall be considered by the court" in its ruling on the juvenile's certification. The written report required to be prepared by § 211.071.6 "shall include" the available information relevant to the following criteria:

(1) The seriousness of the offense alleged and whether the protection of the community requires transfer to the court of general jurisdiction;

(2) Whether the offense alleged involved viciousness, force and violence;

(3) Whether the offense alleged was against persons or property with greater weight being given to the offense against persons, especially if personal injury resulted;

(4) Whether the offense alleged is a part of a repetitive pattern of offenses which indicates that the child may be beyond rehabilitation under the juvenile code;

(5) The record and history of the child, including experience with the juvenile justice system, other courts, supervision, commitments to juvenile institutions and other placements;

(6) The sophistication and maturity of the child as determined by consideration of his or her home and environmental situation, emotional condition and pattern of living;

6

(7) The age of the child;

(8) The program and facilities available to the juvenile court in considering disposition;

(9) Whether or not the child can benefit from the treatment or rehabilitative programs available to the juvenile court; and

(10) Racial disparity in certification.

§ 211.071.6(1)-(10).[7]

"Missouri's juvenile certification process meets all [due process] requirements." *T.D.S.*, 643 S.W.3d at 520. "The process [of juvenile certification] is constitutional if a hearing is provided, the juvenile is given the right to counsel and access to his or her records, and it results in a decision that sets forth the basis for the decision to relinquish jurisdiction in a way that is sufficient to permit meaningful appellate review." *Id.* (quoting *State v. Nathan*, 404 S.W.3d 253, 260 (Mo. banc 2013)). The ability to cross-examine the DJO who prepared the § 211.071.6 report is a critical component of the process. *Id.* at 522.

The requirements of § 211.071 are reiterated in Rules 129.03 and 129.04.[8] Rule 129.03 requires the JO to "make an investigation to aid the court in determining whether the juvenile is a proper subject to be dealt with under the juvenile code" and then to give "[a] written report of the investigation" to the court. Rule 129.03(a)-(b). Rule 129.04 governs the "Dismissal Hearing":

> At the hearing, which shall be held on the record, the court shall receive evidence on whether the juvenile is a proper subject to be dealt with under the juvenile code. The juvenile officer who prepared the report of the investigation required under Rule 129.03 may be examined by counsel. All parties shall be afforded the opportunity to testify, present evidence, cross-examine witnesses, and present arguments of law and fact and arguments concerning the weight, credibility and effect of the evidence.

Rule 129.04(b).

---

[7] E.T.S. objected to testimony from the DJO related to findings under § 211.071.6(6) and (9).
[8] All rule references are to the Missouri Supreme Court Rules (2021).

Chapter 211 has been recognized as "a complete act or law within itself." *In re Beste*, 515 S.W.2d 530, 533 (Mo. 1974). Nothing in Chapter 211 requires that the testifying JO be an expert or that expert testimony be presented to support the § 211.071.6 criteria. Everything required by § 211.071 was done in this case. A written report was compiled by DJO Rollo-Hawkins and received by the juvenile court. A hearing took place, at which E.T.S. was allowed to present evidence and cross-examine both Rollo-Hawkins, the DJO who prepared the written report submitted to the court, and Detective Taylor, who investigated the alleged crimes and whose account of his investigation was contained in the written report, and E.T.S. was allowed to present his argument against certification. After considering the evidence, the juvenile court issued its judgment of dismissal, in which it considered all ten factors in § 211.071.6.

E.T.S. argues that § 490.065 applies to a certification hearing, such as the one at issue in this case, and effectively adds additional procedural requirements. Section 490.065 applies to the following:

> [A]ctions brought under chapter 451, 452, 453, 454, or 455 [domestic relations actions] or in actions *adjudicated* in juvenile courts under chapter 211 or in family courts under chapter 487, or in all proceedings before the probate division of the circuit court, or in all actions or proceedings in which there is no right to a jury trial.

§ 490.065.1 (emphasis added). Thus § 490.065.1 applies to juvenile proceedings under Chapter 211 only when the juvenile proceeding is an *adjudication.* The certification hearing involved in this case is not an "adjudication." *T.D.S.*, 643 S.W.3d at 520. The distinction is that "a certification hearing is not an adjudication of criminal guilt or innocence" or "whether a juvenile committed the offense giving rise to the juvenile court's jurisdiction." *J.N.W. v. Juv. Officer*, 643 S.W.3d 618, 637 n.15 (Mo. App. W.D. 2022). A certification hearing merely leads to a transfer of the case to allow for adjudication in a different court; thus "the focus in a certification proceeding is on the juvenile, not the conduct alleged in the petition." *T.D.S.*, 643 S.W.3d at 520.

Although required by § 211.071 to consider the *nature* of the crimes charged in making a certification decision, the juvenile court does not consider "whether the juvenile did (or did not) commit them." *Nathan*, 404 S.W.3d at 260, 261 (holding that an adjudication of the underlying criminal allegations would result in double jeopardy and a denial of due process).

Therefore, evidentiary rules do not apply to a certification proceeding; "[c]ertification proceedings do not have to 'conform with all of the requirements of a criminal trial or even of the usual administrative hearing' as long as they 'measure up to the essentials of due process and fair treatment.'" *Id.* at 260 (quoting *Kent v. United States*, 383 U.S. 541, 562 (1966)). For instance, it is well established that the rules of hearsay do not apply in a certification proceeding. *J.N.W.*, 643 S.W.3d at 636 (citing Rule 116.02, governing juvenile proceedings). Under Rule 116.02, the "rules of evidence" apply only to "hearings involving adjudication of the allegations of the petition or motion to modify." There is a clear delineation between the procedures that apply to an adjudication of the petition's allegations and to a hearing regarding the dismissal of that petition, which is not an adjudication.

In its specific reference to juvenile courts, § 490.065.1 includes only "actions adjudicated." Actions are adjudicated in juvenile court without the right to a jury trial. *State v. Andrews*, 329 S.W.3d 369, 374 (Mo. banc 2010) (citing *McKeiver v. Pennsylvania*, 403 U.S. 528, 545 (1971) (holding that trial by jury is not constitutionally required for juvenile court adjudications)). Therefore, the last clause of § 490.065.1 ("actions or proceedings in which there is no right to a jury trial") cannot be read to sweep in juvenile certification hearings simply because they provide no right to a jury trial. To do so would render the statute's specific language regarding juvenile adjudications mere "surplusage," as those adjudications would also fall into the category of "actions or proceedings in which there is no right to a jury trial." Because § 490.065.1 is

9

unambiguous, "there is no basis for construction of the statute and the court must give effect to the statute as it is written." *State v. Goddard*, 34 S.W.3d 436, 438 (Mo. App. W.D. 2000) (quoting *Kansas City Star Co. v. Fulson*, 859 S.W.2d 934, 938 (Mo. App. W.D. 1993)). If a statute is subject to construction, however, appellate courts must interpret it to accomplish the legislature's intent and avoid interpreting it so as to "render some phrases mere surplusage." *State ex rel. Jones v. Prokes*, 637 S.W.3d 110, 116 (Mo. App. W.D. 2021) (quoting *Middleton v. Missouri Dep't of Corr.*, 278 S.W.3d 193, 196 (Mo. banc 2009)). Section 490.065 unambiguously applies only to juvenile adjudications in which criminal guilt or innocence is determined.

The juvenile court provided E.T.S. with due process by fully complying with the requirements of § 211.071. And, because § 490.065 does not apply to juvenile certification hearings, the juvenile court did not abuse its discretion in allowing the DJO's opinion testimony.

## II. The juvenile court did not abuse its discretion, based on a "totality of the circumstances" standard, in admitting the DJO's testimony.

Even if we were to conclude that § 490.065.1 applies to a certification hearing—a finding we do not make—we could not reverse the juvenile court's holding unless we found that E.T.S. was prejudiced by the admission of expert opinion testimony from the DJO. Reversal is not warranted "based merely on the existence of an erroneous ruling." *Frawley v. Frawley*, 597 S.W.3d 742, 749 (Mo. App. W.D. 2020). "[I]nstead, Rule 84.13(b) specifies that '[n]o appellate court shall reverse any judgment unless it finds that error was committed by the trial court against the appellant *materially affecting the merits of the action*.'" *Id.* at 749-50 (emphasis in original).[9]

---

[9] In fact, in a bench-tried case, we assume the lower court did not rely on erroneously admitted evidence; when conducting non-jury proceedings, "judges are given great latitude in the admission of evidence because of the presumption that they will not give weight to incompetent evidence." *State v. Marsh*, 618 S.W.3d 625, 629 (Mo. App. S.D. 2020) (quoting *Worthington v. State*, 166 S.W.3d 566, 573 (Mo. banc 2005)). "Because of this, it is difficult to base reversible error on the erroneous admission of evidence in a court-tried case." *Id.* (quoting *Worthington*, 166 S.W.3d at 573).

Here, substantial factual evidence, received without objection by the juvenile court, supports its judgment; thus, there can be no prejudice to E.T.S. even if the DJO's opinions were erroneously admitted.

"[A]ppellate review of a juvenile court's decision to terminate jurisdiction as to a youthful offender is limited to a determination of whether in the totality of the circumstances the court abused its discretion." *J.N.W.*, 643 S.W.3d at 631 (quoting *In re A.D.R.*, 603 S.W.2d 575, 580-81 (Mo. banc 1980)). "Erroneous admission of . . . evidence constitutes harmless error if other properly admitted evidence supports the judgment." *State v. Marsh*, 618 S.W.3d 625, 629 (Mo. App. S.D. 2020) (quoting *Worthington v. State*, 166 S.W.3d 566, 573 (Mo. banc 2005)). Here, substantial factual evidence supported the juvenile court's decision and, although not bound by § 490.065, the court considered E.T.S.'s objections to the DJO's testimony and suggested that she be asked to base her opinion testimony (regarding the factors in § 211.071.6(6) and (9)) on her experience and knowledge as a DJO, which she did.

E.T.S. objected to the DJO's testimony related to factor (6), the sophistication and maturity of the child, and factor (9), whether or not the child can benefit from the treatment or rehabilitative programs available to the juvenile court, both found in § 211.071.6. Specifically, E.T.S. objected to the following questions and answers at the hearing:

> Q. Based on your assessment of [E.T.S.], does he present with age-appropriate intelligence, maturity, and sophistication?
>
> [Objection]
>
> A. Yes. I do believe that he meets—is average maturity and sophistication.
>
> . . .
>
> Q. Based on your assessment, would probation address [E.T.S.'s] needs and protect the community?

11

A. No.

Q. Would Hilltop?

A. No.

Q. Would the Division of Youth Services?

A. No.

Q. Why would none of these meet his needs and protect the community?

[Objection and question is rephrased.]

Q. Ms. Hawkins, based on your experience as a deputy juvenile officer and your knowledge and I guess experience working with these programs that we went through, would [E.T.S.] benefit from any of those programs?

A. There's always potential for benefit, but I don't believe that any of these would provide a reasonable expectation that he would be rehabilitated to the point where he is no longer a risk to the community.

The DJO also testified, without objection, about facts, information and observations that led her to reach these two conclusions. In addition, the DJO's certification report sets out, at length, facts and observations supporting her conclusions regarding these two factors. Thus, there was evidence in the record, beyond the DJO's opinion, that supported the juvenile court's conclusions regarding E.T.S.'s maturity and sophistication and whether programs available in the juvenile system would meet E.T.S.'s needs and protect the community.

Furthermore, the testimony objected to at the hearing was nearly identical to information provided in the certification report prepared by the DJO and required by § 211.071. In addressing factor (6) ("Sophistication and Maturity"), the report states, "Information gathered suggests that [E.T.S.'s] intelligence, maturity and sophistication are average for a seventeen year old." And, in addressing factor (9) ("Youth's ability to benefit from programs"), the report states, "Based on [E.T.S.'s] age and the serious and violent nature of the offenses, retention in the juvenile system

12

would not provide a reasonable likelihood of rehabilitation that would meet his treatment needs and protect the community from his dangerous, aggressive behaviors." While, at the hearing, E.T.S. objected to the court's accepting the report, no challenge to the juvenile court's reliance on the certification report was raised on appeal. The admission of the DJO's testimony at the certification hearing cannot be prejudicial when the exact same information was before the court in the form of the certification report.

Finally, in making its certification decision, the juvenile court is not required to give equal weight to each of the factors listed in § 211.071.6, nor is it even required to make an express finding on each one. *State v. Perry*, 954 S.W.2d 554, 567 (Mo. App. S.D. 1997). In fact, the first three factors—all involving facts, not opinion—"contain some of the most critical considerations in certification." *T.D.S.*, 643 S.W.3d at 527. "Notably, the serious nature of the crime is the dominant criterion among the ten factors." *State v. Thomas*, 70 S.W.3d 496, 504 (Mo. App. E.D. 2002)). Those factors easily weigh in favor of certification here because the crimes with which E.T.S. is charged, second-degree murder and armed criminal action, are serious, violent crimes against persons. Therefore, we cannot accept E.T.S.'s argument that, absent the DJO's testimony regarding his maturity and the likelihood that he would benefit from the juvenile system, the juvenile court would not have dismissed the petition. Under the totality of the circumstances before the juvenile court and because E.T.S. suffered no prejudice from its admission of the DJO's testimony, the juvenile court did not abuse its discretion.

**Conclusion**

Because the certification hearing is not an adjudication, § 490.065 does not apply. E.T.S.'s due process rights were safeguarded by the juvenile court's compliance with the processes set forth in Chapter 211. Further, E.T.S. was not prejudiced by the alleged error because substantial factual

evidence, received without objection by the juvenile court and not challenged on appeal, supports its judgment. Therefore, the juvenile court's decision to dismiss the petition and certify E.T.S. for prosecution as an adult is affirmed.

_____
Karen King Mitchell, Presiding Judge

Cynthia L. Martin and Anthony Rex Gabbert, Judges, concur.